# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Interfaith Center on Corporate Responsibility**, 475 Riverside Drive, Suite 1842, New York, NY 10027;<br><br>and<br><br>**As You Sow**, 11461 San Pablo Avenue, Suite 400, El Cerrito, CA 94530;<br><br>   *Plaintiffs*,<br><br>v.<br><br>**Securities and Exchange Commission**, 100 F Street NE, Washington, DC 20549;<br><br>**Paul S. Atkins**, in his official capacity as Chairman of the Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549;<br><br>**Hester M. Peirce**, in her official capacity as Commissioner of the Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549;<br><br>and<br><br>**Mark T. Uyeda**, in his official capacity as Commissioner of the Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549;<br><br>   *Defendants*. | **Case No. 26-cv-_____** |

## COMPLAINT

**INTRODUCTION**

1. For more than eight decades, the Securities and Exchange Commission (SEC) has safeguarded the right of shareholders in a public company to present a proposal in the company proxy statement regarding significant issues of concern. This right—enshrined in a regulation known as Rule 14a-8 under the Securities Exchange Act of 1934 (the Exchange Act)—has long served as a foundational mechanism for shareholder participation in corporate governance and for advancing the Exchange Act's core goals of investor protection and transparent markets.

2. Shareholder proposals are a critical mechanism for a company's shareholders to raise and vote on important issues directly relevant to a company's long-term performance and risk profile. More broadly, this process reflects a core principle of American capital markets: that investors who supply capital to public companies retain meaningful rights to protect their investment by participating in corporate governance. The transparency and accountability that follow robust shareholder rights are also a key reason that global capital flows to American markets—investors have confidence that U.S. markets provide meaningful mechanisms for disclosure, accountability, and investor protection.

3. When a company seeks to exclude a qualified shareholder proposal from its proxy materials, it must comply with the procedural framework established by Rule 14a-8. The company must notify both the Commission and the proposal's proponent and articulate the legal basis for exclusion. This obligation ensures that proponents have an opportunity to respond and that SEC staff can evaluate whether the exclusion is consistent with Rule 14a-8 and longstanding Commission precedent.

4. In recent months, the SEC has adopted a new policy abandoning the requirements and procedures established by the Commission's own regulation governing the shareholder proposal process. Rather than hearing from both sides and engaging in the review contemplated by the

1

regulations, SEC staff now categorically issues "no-objection" letters—or effectively blesses exclusions—when companies invoke certain formulaic assertions in their submissions. This approach replaces meaningful regulatory oversight with a new, de facto rubber-stamp process that allows companies to exclude proposals without any analysis by the staff.

5. This policy was implemented without the notice-and-comment rulemaking that is required by the Administrative Procedure Act (APA) when an agency adopts or effectively alters binding regulatory standards. The APA requires federal agencies to act through transparent procedures; provide reasoned explanations for policy changes, regardless of the language the government uses to characterize them; and to give affected stakeholders an opportunity to comment before altering decades of the operation of existing regulations. The SEC circumvented the procedural safeguards of the APA and effectively changed how Rule 14a-8 operates through informal staff practice rather than through rulemaking.

6. The result is a process that deprives shareholders of rights established by SEC regulation and decades of Commission precedent. This approach will lead to the exclusion of shareholder proposals that should be included in proxy materials, weakening a core mechanism of shareholder participation in corporate governance. In doing so, it risks undermining investor confidence in the transparency and accountability of U.S. public markets—principles that have long distinguished American capital markets globally. These outcomes are difficult to reconcile with the Commission's statutory mission to protect investors, maintain fair and orderly markets, and facilitate capital formation.

## PARTIES

7. Plaintiff Interfaith Center on Corporate Responsibility (ICCR) is a 55-year-old membership coalition with more than 300 institutional investor members holding or managing over $4 trillion in invested capital. ICCR helps its members to engage with corporations on environmental and

social risks, and on sound corporate governance, with the goal of enhancing the long-term value of companies in their portfolios. ICCR members include faith communities, pension funds, endowments, asset managers, and other institutional investors who view shareholder engagement as an important strategy in responsibly stewarding their investments. ICCR is a tax-exempt, nonprofit organization with its principal place of business in New York, New York.

8. ICCR's asset-owner and asset-manager members have a fiduciary duty to their clients and beneficiaries to maximize the long-term value of their investments and to mitigate systemic risk to the portfolio that can affect long-term performance. ICCR's faith-based members, which account for more than half of its total membership, also have investment policies based on the faith, values, and principles of their religious institutions, which undergird their fiduciary obligations to their institutions and beneficiaries. Shareholder engagement with portfolio companies is central to fulfilling these fiduciary obligations. ICCR and its members view shareholder proposals as both a fundamental investor right and a critical tool to facilitate meaningful engagement and bring issues of concern to companies, as well as fellow shareholders. ICCR members use the shareholder engagement process, including shareholder proposals, to engage in dialogue with companies on issues of importance and advocate that companies consider the impact of their policies and practices on society as key to building long-term financial success.

9. Plaintiff As You Sow represents a range of shareholders in engagements with companies on a range of issues with the goal of reducing risk, benefiting corporate brand reputation, and increasing company value. It is a not-for-profit organization with its principal place of business in El Cerrito, California.

10. As You Sow also files shareholder proposals on behalf of itself and other shareholders, where necessary, to bring to the attention of management, boards, and shareholders issues that present significant risks to corporate performance and long-term shareholder value.

3

11. Defendant the Securities and Exchange Commission is an agency of the United States, 15 U.S.C. § 78d(a), with its headquarters located at 100 F Street NE, Washington, D.C. 20549.

12. Defendant Paul S. Atkins is the Chairman of the Securities and Exchange Commission. Chairman Atkins is sued in his official capacity.

13. Defendant Hester M. Peirce is a Commissioner of the Securities and Exchange Commission. Commissioner Peirce is sued in her official capacity.

14. Defendant Mark T. Uyeda is a Commissioner of the Securities and Exchange Commission. Commissioner Uyeda is sued in his official capacity.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Jurisdiction is also proper under 15 U.S.C. § 78aa because this case concerns a violation of the Exchange Act "or the rules and regulations thereunder."

16. Because this suit seeks relief other than money damages, the United States has waived its sovereign immunity. 5 U.S.C. § 702.

17. Venue is proper because Defendants are an agency of the United States and officers of the United States, all of whom reside in this judicial district. 28 U.S.C. § 1391(e)(1).

## FACTUAL ALLEGATIONS

### Background

18. State law generally prescribes the formation and governance of corporations. One key feature of modern corporations is the division of corporate ownership and control.

19. Generally, a corporation's board of directors sets policy, and its officers adopt internal controls and procedures consistent with those policies to manage the affairs of the corporation within the bounds provided by state law and the corporation's bylaws.

4

20. Although directors and officers are responsible for the day-to-day affairs of the corporation, shareholders are its owners and retain fundamental governance rights under state law.

21. State law generally requires a corporation to hold an annual meeting of shareholders, where shareholders may elect directors, vote on executive compensation, ratify the selection of the company's auditors, and vote on other matters brought forward by the board of directors.

22. However, management may prefer not to bring forward every issue worthy of shareholder consideration. Thus, a key mechanism that shareholders have to provide direction to the company and ensure the corporate franchise is voting on resolutions put forward by the shareholders themselves at these meetings.

23. A "shareholder proposal" is a "recommendation or requirement that the company and/or its board of directors take action" on an issue, which a shareholder "present[s] at a meeting of the company's shareholders." 17 C.F.R. § 240.14a-8(a). As discussed further herein, federal securities law provides shareholders with certain rights regarding these proposals by imposing specific obligations on the companies they own.

24. Whether an issue is brought up by management or by a shareholder proposal, the company's shareholders can vote either in person or via a "proxy." When the shareholder elects to vote via proxy, she authorizes another person to cast votes on her behalf. *See, e.g.*, Del. Code tit. 8, § 212(b).

25. Shareholders need information to make informed decisions about their proxy votes. In advance of a shareholder meeting, a company's management must distribute to all shareholders a "proxy statement" that identifies the agenda items to be voted at an annual meeting of shareholders. The proxy statement contains information that the shareholders are legally entitled to receive that may inform their voting. The proxy materials also include a "proxy card" or voter instruction form that shareholders use to specify how they want their shares to be voted on each item.

26. The Exchange Act regulates the content and form of proxy statements. Specifically, section 14(a) authorizes the Commission to promulgate regulations regarding the form and content of proxy solicitations. *See* 15 U.S.C. § 78n(a). Congress enacted this provision and mandated that the SEC adopt regulations thereunder "to require fair opportunity for the operation of corporate suffrage." *SEC v. Transamerica Corp.*, 163 F.2d 511, 518 (3d Cir. 1947).

27. These federal regulations serve an important function by ensuring that shareholders who vote by proxy can "control the corporation as effectively as they might have by attending a shareholder meeting." *Bus. Roundtable v. SEC*, 905 F.2d 406, 410 (D.C. Cir. 1990). *See generally* 17 C.F.R. §§ 240.14a-1(g), 240.14a-3.

28. As discussed further below, federal law requires that a company's proxy statement include eligible shareholder proposals absent the applicability of an explicit exclusion.

### SEC Rule 14a-8

29. The regulation at the center of this case—Rule 14a-8—mandates that "a company must include a shareholder's proposal in its proxy statement" unless the proposal falls within an enumerated exclusion. 17 C.F.R. § 240.14a-8. Inclusion of proposals in company proxy statements ensures "that public investors receive full and accurate information about all [shareholder] proposals that are to, or should, be submitted to them for their action." SEC Release No. 34-12599, 41 Fed. Reg. 29989, 29990 (July 20, 1976).

30. The right to present and vote on shareholder proposals is essential for investors. Such proposals allow shareholders to protect their investments by seeking disclosure or suggesting corporate actions intended to guard against significant risks facing the company and maintain or increase long-term company value. Shareholder proposals can also protect against corporate misconduct or malfeasance by asking companies to consider issues that can help strength corporate governance.

31. Since the promulgation of Rule 14a-8, shareholders have put forward proposals to address a broad range of risks and concerns relevant to companies and their owners. For example, shareholder proposals have enabled investors to vote on topics including child labor, governance of opioid risks, worker safety, and environmental pollution—just a few of the many examples of corporate concerns that can create significant legal, regulatory, operational, and reputational risks affecting corporate performance and long-term shareholder value.

32. As detailed further below, a company must include an eligible shareholder's timely submitted proposal in its proxy materials, along with a 500-word supporting statement, unless Rule 14a-8 provides a basis for excluding the proposal.

33. Rule 14a-8 enumerates 13 substantive bases on which a company may exclude a procedurally proper shareholder proposal submitted by an eligible shareholder. *See id.* § 240.14a-8(i). These include, for example, that the proposal is "[i]mproper under state law"; relates "to the company's ordinary business operations" entrusted to management's discretion; or concerns a topic not "significantly related to the company's business." *Id.*

34. If a company intends to invoke one of these bases for excluding a shareholder proposal, it must follow the process set forth by Rule 14a-8. For many years, that process generally has had three steps:

a. First, the company must file a notice with the Commission when it intends to exclude the shareholder proposal, copying the proposal's proponent. *See id.* § 240.14a-8(j). The company must identify on which substantive basis it relies to exclude the shareholder proposal. *See id.* § 240.14a-8(i).

b. Second, the proponent has a right to respond to the company's arguments. *See id.* § 240.14a-8(k). The rule does not set a particular deadline for a response, but it encourages proponents to submit a response "as soon as possible" so that "the

Commission staff will have time to consider fully [the proponent's] submission before it issues a response." *Id.*

c. Third, the staff issues a response either concurring or refusing to concur with the bases on which the company proposes to exclude the shareholder proposal.

35. Critically, Rule 14a-8 places "the burden of persuading the Commission or its staff . . . on the company to demonstrate that it is entitled to exclude a proposal." *Id.* § 240.14a-8(g).

**SEC's Traditional No-Action Letters**

36. For decades, the SEC policy was that staff would substantively evaluate a company's submission, along with a proponent's response, to determine whether the company met its burden of persuading the Commission or its staff that the company was entitled to exclude the proposal under Rule 14a-8. *See* Substantial Implementation, Duplication, and Resubmission of Shareholder Proposals Under Exchange Act Rule 14a-8, 87 Fed. Reg. 45052, 45053 (proposed July 27, 2022) (explaining that, "[f]or many years," the staff have "offer[ed] its views" on whether a company may properly exclude a proposal under Rule 14a-8); *see also* Div. of Corp. Fin., *Staff Legal Bulletin No. 14* (July 13, 2001; modified Feb. 4, 2002), https://perma.cc/USN8-7T4P ("We consider the specific arguments asserted by the company and the shareholder, the way in which the proposal is drafted and how the arguments and our prior no-action responses apply to the specific proposal and company at issue.").

37. This work was carried out by the staff of the Division of Corporation Finance, which has responsibility "for the administration of the disclosure requirements and other provisions of . . . the Securities Exchange Act of 1934, [including] . . . [t]he examination and processing of proxy soliciting material filed pursuant to" the Exchange Act and Rule 14a-8. 17 C.F.R. § 200.18(b)(3); *see also id.* § 200.30-1(f)(4) (delegation of authority to Director of the Division of Corporation Finance).

8

38. If the company met its burden of persuasion, the staff would issue a letter stating that "[t]here appears to be some basis" for the company's view that it may exclude the proposal, and indicating that the staff would not recommend enforcement action if the company excluded the proposal. *See, e.g.*, Letter from Rule 14a-8 Review Team to Marc S. Gerber (Mar. 18, 2025), https://www.sec.gov/files/corpfin/no-action/14a-8/hoysaabbvie31825-14a8.pdf. This type of response was known as a "no-action" letter.

39. By contrast, if the company did not meet its burden of persuasion, then the staff would issue a letter stating that it is "unable to concur" in the company's view. *See, e.g.*, Letter from Rule 14a-8 Review Team to Ning Chiu (Mar. 19, 2025), https://www.sec.gov/files/corpfin/no-action/14a-8/cheveddenaes31925-14a8.pdf. If the staff was "unable to concur" with the company's position, and the company nonetheless omitted the proposal, the staff could refer the matter for possible enforcement action against the company.

40. These response letters did not purport to bind the Commission, companies, or shareholder proponents. *See* SEC Release No. 34-12599, 41 Fed. Reg. at 29990. But as a practical matter, the staff's concurrence or refusal to concur had typically been honored by both the company and the proponent. No-action responses "substantially affect[ed] the behavior of all market participants" because shareholder proponents and companies alike would "rely" on them to guide their actions. Shalini Bhargava Ray, *Individualized Guidance in the Federal Bureaucracy* (June 4, 2024) (report to the Admin. Conf. of the U.S.), https://perma.cc/PF8G-ZH4G (quoting Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 947 (1998)).

41. Companies that received a no-action response deemed it appropriate to rely on that letter to exclude a shareholder proposal, while companies that received a letter stating the staff was unable to concur would routinely include that proposal in their proxy materials. As a practical

9

matter, the fact that the company expected a substantive response from the staff often served to spur engagement with the proponent and bring about a mutually satisfactory resolution.

42. As a result, the Rule 14a-8 no-action process is of great importance to market participants, including both shareholder proponents and company management, which make decisions regarding shareholder proposals in reliance on the guidance provided by the SEC through the no-action process.

## SEC Adopts a Novel "No-Objection" Policy

43. Late last year, the SEC dramatically upended decades of practice regarding the issuance of no-action letters under Rule 14a-8.

44. In October 2025, Chairman Atkins gave a speech calling for a "fundamental reassessment of Rule 14a-8." *See* Chairman Paul S. Atkins, *Keynote Address at the John L. Weinberg Center for Corporate Governance's 25th Anniversary Gala* (Oct. 9, 2025), https://perma.cc/SXY6-SVZ2. Chairman Atkins expressed his view that companies' proxy statements include too many shareholder proposals. *See id.*

45. Chairman Atkins recognized that any changes to Rule 14a-8 must undergo notice-and-comment rulemaking, culminating in a vote by the Commission. *See id.* ("Of course, the Commission must first propose changes, then gather and consider public feedback before adopting any changes.").

46. Despite the Chairman's recognition that notice-and-comment rulemaking would be required to modify Rule 14a-8, the SEC, without undertaking any rulemaking process and without any Commission vote, changed the process for considering and responding to company notifications of intent to exclude a shareholder proposal.

47. In November 2025, the SEC's Division of Corporation Finance issued a statement announcing a revised policy regarding how the staff would now assess and respond to company

10

notices of intent to exclude shareholder proposals under Rule 14a-8 during the 2025-2026 proxy season. *See* Div. of Corp. Fin., SEC, *Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season* (Nov. 17, 2025), https://perma.cc/8PRH-7XLH. We refer to this new policy as the "No-Objection Policy."

48. Through the Policy, the SEC effectuated in the middle of the ongoing proxy season an about-face in the half-century-old Rule 14a-8 process, on which both companies and shareholders have relied. Although dressed as a staff statement, the Policy is a legislative rule that alters proponents' legal rights and staff's obligations in the Rule 14a-8 process. The Policy also represents the culmination of the agency's decisionmaking regarding how to process and respond to company notifications of intent to exclude shareholder proposals during the current proxy season.

49. Under the No-Objection Policy, a company remains obligated to provide timely notice of its intent to exclude a shareholder proposal pursuant to Rule 14a-8(j). *Id.*

50. The new Policy, however, establishes two modes of SEC response dependent on the basis a company asserts for excluding the proposal.

51. For twelve of the thirteen possible bases for excluding a proposal, the new No-Objection Policy provides the company the option to obtain a "no-objection" letter from the SEC.

52. If the company submits "an unqualified representation that the company has a reasonable basis to exclude the proposal," then the SEC staff "will respond with a letter indicating that . . . the Division [of Corporation Finance] will not object if the company omits the proposal from its proxy materials." *Id.* Under the policy, the company's representation can be "based on the provisions of Rule 14a-8, prior published guidance, and/or judicial decisions." *Id.* (footnote omitted).

53. If the company does not include such a representation, then the Division of Corporation Finance will not respond to the company's notice. *Id.*

11

54. This No-Objection Policy is explicit that the SEC staff "will not evaluate the adequacy of the representation or express a view on the basis or bases the company intends to rely on in excluding the proposal," as it had done previously. *Id.* Rather, the SEC's issuance of a no-objection letter is "based solely on the company's or counsel's representation." The agency applies no independent judgment and does not consider the proponent's arguments—frequently not even waiting for proponent's response.

55. Only if a company asserts that the proposal is not a proper subject under state law, and therefore excludable under Rule 14a-8(i)(1), will staff "continue to review and express its views" as it did under the prior policy. *Id.*

56. The SEC's statement offered two reasons for adopting the No-Objection Policy: "resource and timing considerations following the lengthy government shutdown," and "the extensive body of guidance from the Commission and the staff available to both companies and proponents." *Id.*

57. Neither reason withstands scrutiny, which makes the No-Objection Policy arbitrary and capricious. *See Ohio v. EPA*, 603 U.S. 279, 292 (2024) ("An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'").

58. As to the first reason, the SEC fails to sufficiently explain why the 2025 government shutdown created "resource and timing considerations" that were incompatible with the prior policy. *See* No-Objection Policy, *supra*. Consistent with prior shutdowns, the SEC staff could have paused reviewing submissions under Rule 14a-8 during the shutdown and then resumed reviewing those submissions and issuing no-action letters after the government reopened.

59. Indeed, as recently as October 2025, the SEC announced its intention to have staff "return to reviewing no-action requests when" the government reopened. SEC, *Division of Corporation Finance Actions During Government Shutdown* (last updated Oct. 1, 2025),

12

https://perma.cc/54DU-Q8FT. The November announcement of the No-Objection Policy fails to reasonably explain why the agency changed course.

60.    As to the second reason, the SEC stated that no-action letters were unnecessary in light of the "extensive body of guidance from the Commission and the staff available" regarding most bases for exclusion. *See* No-Objection Policy, *supra*.

61. The SEC also failed to reasonably explain how or why companies and proponents could fully rely on prior published guidance, particularly given that shareholder proposals' subject matter and facts evolve over time.

62. The SEC's November policy announcement also stated that "there is not a sufficient body of applicable guidance for companies and proponents to rely on" with respect to Rule 14a-8(i)(1), which concerns "the application of state law . . . to precatory proposals." *Id.* The SEC failed to substantiate this view or to explain why it viewed available guidance differently for this issue than for other bases for exclusion. *See id.*

63. In fact, there has been no change in the law with respect to Rule 14a-8(i)(1) that would justify the No-Objection Policy's differential treatment.

64. Immediately following the issuance of the No-Objection Policy, then-Commissioner Caroline Crenshaw released a statement criticizing the new policy. Comm'r Caroline A. Crenshaw, *Statement on Division of Corporation Finance's Announcement on the 14a-8 Process* (Nov. 17, 2025), https://perma.cc/DX42-YDS2 ("Crenshaw Statement").[1]

65. Commissioner Crenshaw explained a key flaw with the No-Objection Policy: the SEC staff now "will 'not object' even if it *would have disagreed* with the company's analysis had it substantively reviewed the submission." *Id.* In other words, "staff have been ordered to rubber stamp those submissions irrespective of their content." *Id.*

---

[1] Commissioner Crenshaw's term concluded on January 3, 2026.

66. Commissioner Crenshaw underscored that the No-Objection Policy's rationale is not reasonably explained. The policy first "states that no-action relief has become superfluous because there is an 'extensive body of guidance from the Commission and the staff available to both companies and proponents.' But later, it notes that 'prior staff responses to Rule 14a-8 no-action requests are not binding and reflect only informal staff views.'" *Id.* (alteration omitted). That inconsistency invites arbitrary decision-making, and the SEC staff and companies can "cherry-pick and determine which guidance [they] find[] most helpful" at any given time. *Id.*

67. Commissioner Crenshaw also noted that the No-Objection Policy's "does not cite any changes in law" regarding Rule 14a-8(i)(1) "because there have not been any." *Id.*

68. Commissioner Crenshaw aptly summarized the bottom-line effect of the No-Objection Policy: "it hands companies a hall pass to do whatever they want" and "effectively creates unqualified permission for companies to silence investor voices (with 'no objection' from the Commission)." *Id.*

### Implementation of the No-Objection Policy

69.  Commissioner Crenshaw's predictions regarding the Policy's effects have been borne out.

70. For example, on January 12, 2026, Royal Gold, Inc., submitted a notification under Rule 14a-8(j) that it intended to omit a shareholder proposal made by As You Sow, a qualified shareholder. *See* Letter from David Crandall (Jan. 12, 2026), https://www.sec.gov/files/corpfin/no-action/14a-8/asyousowroyalgoldinc11526.pdf.

71.  The next day, As You Sow notified the SEC and the company that it intended to file a response pursuant to Rule 14a-8(k) within three weeks explaining why the shareholder proposal could not be properly excluded.

72. Under the prior no-action policy and practice, a proponent's response submitted less than one month after the company's notification would ordinarily be considered timely if the proponent

14

notified the SEC of their intent to respond, and the SEC staff would consider arguments and evidence offered by the proponent.

73. Under the newly adopted No-Objection Policy, however, staff issued a no-objection letter just two days later—on January 15, 2026—well before As You Sow had the opportunity to respond. *See* Letter from Div. of Corp. Fin. to David Crandall (Jan. 15, 2026), https://www.sec.gov/files/corpfin/no-action/14a-8/asyousowroyalgoldinc11526.pdf.

74. This same fact pattern—the SEC staff issuing a no-objection letter before receiving a proponent's response—appears to be standard practice for the 2025-2026 proxy season, including with respect to proposals submitted by ICCR's members and As You Sow.

75. But for the SEC's new No-Objection Policy, the SEC staff would substantively consider proponents' responses submitted within a reasonable time frame, including any evidence and argument that they provide, prior to issuing no-action responses.

**Effects of the No-Objection Policy**

76. The No-Objection Policy has already had, and will continue to have, adverse effects on shareholders and proponents, including Plaintiffs ICCR's members, As You Sow, and the shareholders As You Sow represents. It transforms a balanced process designed to fairly consider both companies' and shareholder proponents' arguments into a lopsided one by which the agency automatically favors management, so long as the company invokes the magic words.

77. Because the No-Objection Policy requires the SEC staff to issue a no-objection response if a company makes an unqualified representation that it has a basis to exclude a proposal, SEC staff no longer awaits proponents' responses or considers them as containing relevant information.

78. This change negates shareholder proponents' legal right to timely submit information responding to a company's notice of intention to exclude a proposal, which is guaranteed by Rule 14a-8(k). It is also inconsistent with the Commission's prior guidance, which explains that "staff

15

will *always* consider information concerning alleged violations of" securities laws, including "arguments" why a shareholder proposal must be included in a company's proxy statement. SEC Release No. 34-12599, 41 Fed. Reg. at 29991 (emphasis added).

79. The No-Objection Policy also effectively modifies the burden of persuasion established by Rule 14a-8.

80. By regulation, "the burden is on the company to demonstrate that it is entitled to exclude a proposal." 17 C.F.R. § 240.14a-8(g).

81. The No-Objection Policy relieves companies of bearing that legal obligation, notwithstanding the plain text of Rule 14a-8. Rather than demonstrating to the staff that the company is entitled to exclude a proposal, the company can obtain the SEC's blessing merely by unilaterally asserting its unqualified opinion.

82. By the same token, the No-Objection Policy forbids the staff from fulfilling their legal obligation under Rule 14a-8 to determine whether the company has met its burden of persuasion to demonstrate an entitlement to exclude a proposal.

83. Alternatively, the No-Objection Policy can be viewed as establishing an irrebuttable presumption that a company may exclude a shareholder proposal as long as it makes an unqualified representation that it has a reasonable basis to do so, and that the SEC is essentially signaling that it has abandoned its obligation to enforce its own regulations.

84. Ultimately, the No-Objection Policy is a categorical non-enforcement policy that "hands companies a hall pass to do whatever they want. It effectively creates unqualified permission for companies to silence investor voices (with 'no objection' from the Commission)." Crenshaw Statement, *supra*.

85. By "withdraw[ing] some of the discretion" that the agency "previously held" regarding implementation and enforcement of Rule 14a-8, the No-Objection Policy qualifies as a final

16

agency action within the meaning of 5 U.S.C. § 704. *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 56 (D.C. Cir. 2016); *see also, e.g.*, *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (holding that an agency action that "narrows the field of potential plaintiffs" carries legal consequences).

### Harms to Plaintiffs

86. The No-Objection Policy causes concrete harm to Plaintiffs ICCR and As You Sow in several ways.

87. Plaintiff ICCR is a membership association with members that are qualified shareholders of many different publicly traded companies.

88. ICCR members frequently use the shareholder proposal process to highlight critical issues to management. For example, during the 2025 proxy season, ICCR members filed 350 shareholder resolutions with 241 companies pursuant to Rule 14a-8. Fifty-two members acted as lead filers, and 56 members acted as co-filers.

89. Similarly, Plaintiff As You Sow is a qualified shareholder of numerous publicly traded companies. It frequently files shareholder proposals on its own behalf and as a representative of a wide range of other qualified shareholders, including endowments, foundations, donor-advised funds, and individual investors.

90. During the 2026 proxy season, As You Sow has filed 47 shareholder proposals on its own behalf and on behalf of other shareholders.

91. As You Sow also expects to file at least 3 additional shareholder proposals on its own behalf, and 2 additional shareholder proposals on behalf of other shareholders, before September 30, 2026.

92. ICCR members' and As You Sow's proposals have been and will be subject to the No-Objection Policy, which makes those organizations the object of this unlawful policy.

17

93. ICCR members, As You Sow, and shareholders represented by As You Sow are harmed by the changes because the No-Objection Policy prevents them from exercising their rights under Rule 14a-8 to provide relevant information and argument to the SEC, and to have that submission considered, before the SEC staff issues a response.

94. ICCR members and As You Sow are also harmed in their capacity as shareholders who regularly vote in favor of proposals offered by *other* shareholders.

95. Companies are using this process to justify improperly excluding shareholder proposals after obtaining no-objection letters. Many shareholders will not be able to sue to obtain injunctive relief requiring a company to include their proposals, and their proposals will therefore be excluded.

96. When a company improperly excludes a shareholder proposal because it received a no-objection letter, then ICCR members and As You Sow lose the opportunity to vote on that proposal, as they would otherwise be able to do.

97. These harms are germane to ICCR's mission, which includes helping to facilitate shareholder engagement with companies by assisting its members with the shareholder proposal process.

98. The No-Objection Policy also harms As You Sow in its purpose of representing shareholders in the Rule 14a-8 process.

99. These harms will persist unless and until the No-Objection Policy is set aside or rescinded. On its face, the Policy applies during the 2025-2026 proxy season (*i.e.*, through September 30, 2026), but the SEC has not announced a clear intention to return to the prior policy after that date.

18

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Administrative Procedure Act
### Contrary to Law

100. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

101. The APA requires a reviewing court to set aside agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

102. The No-Objection Policy deviates from Rule 14a-8 in several ways, and it is therefore contrary to law. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that an agency must abide by its own regulations); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . simply disregard rules that are still on the books.").

103. First, the No-Objection Policy is inconsistent with the burden of persuasion established by Rule 14a-8. *See* 17 C.F.R. § 240.14a-8(g).

104. Because the company bears the burden of persuasion to establish that it may exclude a proposal, if the evidence supporting and negating the invoked basis for excluding the proposal "is evenly balanced," the company "must lose." *Director, Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 272 (1994).

105. The No-Objection Policy derogates from that standard. Under the new No-Objection Policy, a company will receive a no-objection letter "based *solely* on the company's or counsel's representation" that it has a reasonable basis to exclude the proposal.

106. Thus, a company can obtain a no-objection letter without bearing the burden of persuading the SEC that it can properly exclude the proposal, even if the arguments and evidence favor the proponent.

19

107. Second, and relatedly, the No-Objection Policy improperly abdicates the SEC's role in evaluating the evidence submitted by the company and the proponent in the Rule 14a-8 process.

108. A burden of persuasion necessarily supposes that a factfinder will weigh the evidence and determine whether a party has demonstrated its entitlement to relief. In the case of a review by staff, that would result in either a concurrence in the company's analysis or a conclusion that the staff is unable to concur.

109. The No-Objection Policy requires SEC staff to "rubber stamp" a company's submission rather than weighing the evidence regarding whether a proposal may be excluded. Crenshaw Statement, *supra*.

110. Third, the No-Objection policy contravenes a proponent's right to submit evidence and argument regarding whether a company has a legitimate basis to exclude a proposal, and to have that submission considered by the staff. *See* 17 C.F.R. § 240.14a-8(k).

111. Prior Commission statements regarding Rule 14a-8 confirm that a proponent has a procedural right to consideration of their submission. According to the Commission, the "staff will *always* consider information concerning alleged violations of the statutes or rules administered by the Commission, and this may include arguments as to why it is believed that the intended omission of a shareholder proposal would be violative of the proxy rules." SEC Release No. 34-12599, 41 Fed. Reg. at 29991 (emphasis added).

112. In effect, the No-Objection Policy eliminates this right by making a company's unqualified representation dispositive. As a result, the SEC now issues no-objection letters without awaiting the proponent's timely response, even when the proponent notifies the SEC that a response is forthcoming.

113. Because the No-Objection Policy is contrary to the Commission's binding regulations, it is contrary to law and must be set aside and vacated.

20

## COUNT II
### Violation of the Administrative Procedure Act
### Arbitrary and Capricious

114. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

115. The APA requires a reviewing court to set aside agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

116. When an agency changes its policy, it is arbitrary and capricious to not "provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navaro*, 579 U.S. 211, 221 (2016). In addition to "show[ing] that there are good reasons for the new policy," an agency must provide a reasoned and reasonable explanation for "disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox Television Stations*, 556 U.S. at 516.

117. The SEC failed to articulate a rational justification for adopting the No-Objection Policy.

118. The two rationales offered by the agency do not meet its burden.

119. The SEC failed to reasonably explain why the 2025 government shutdown created such resource constraints that would necessitate the No-Objection Policy (despite past practice and its stated intention to resume reviewing Rule 14a-8 submissions at end of the shutdown).

120. The SEC's explanation regarding the sufficiency of existing guidance is also not reasonable or reasonably explained. It fails to provide a reasoned explanation for why or how companies and proponents could fully rely on the prior guidance given the SEC's stated view that such guidance is nonbinding, and it fails to reasonably explain how such guidance could be sufficient given the unique facts and circumstances presented by each year's proposals.

121. Moreover, in adopting the No-Objection Policy, the SEC failed to account for the reliance interests that proponents, companies, and shareholders had in the prior policy and procedures for reviewing submissions under Rule 14a-8 and issuing no-action responses. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30-31 (2020).

122. The No-Objection Policy is therefore arbitrary and capricious, and it must be set aside and vacated.

## COUNT III
### Violation of the Administrative Procedure Act
### Without Observance of Procedure Required by Law

123. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

124. The APA requires a reviewing court to set aside agency action that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

125. In substance and effect, the No-Objection Policy modifies or amends Rule 14a-8 in several ways, none of which have been approved by the Commission or undergone notice-and-comment procedure, as required by 5 U.S.C. § 553.

126. As alleged above, *supra* ¶¶ 103-106, the No-Objection policy effectively eliminates the burden of persuasion established by regulation. 17 C.F.R. § 240.14a-8(g).

127. In addition, as alleged above, *supra* ¶¶ 110-112, the No-Objection Policy eliminates proponents' rights to present argument and evidence that will be considered by the SEC through the no-action process.

128. Because it is irreconcilable with multiple provisions of the regulation, the No-Objection Policy in effect amends or modifies Rule 14a-8. That makes it a substantive or legislative rule under the APA. *See Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 718 (D.C. Cir. 2015) ("[I]f a second rule . . . is irreconcilable with a prior legislative rule, the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." (citation omitted)).

129. The No-Objection Policy also effectively amends Rule 14a-8 by creating an irrebuttable presumption that a company can exclude a shareholder proposal as long as it makes an unqualified

22

representation that it has a reasonable basis to do so. Such an irrebuttable presumption can only be established by a substantive rule. *See Catawba Cnty. v. EPA*, 571 F.3d 20, 34 (D.C. Cir. 2009).

130. Because Rule 14a-8 is a substantive rule promulgated by the Commission through notice-and-comment rulemaking, any amendment to the Rule must occur through notice-and-comment rulemaking as well. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (explaining that the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance").

131. The SEC did not undertake notice-and-comment rulemaking before adopting the No-Objection Policy, nor did the full Commission vote to approve it.

132. As a result, the No-Objection policy was adopted without the procedure required by law and must be set aside and vacated.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

    a.  Declare the No-Objection Policy contrary to law, arbitrary and capricious, and adopted without observance of procedure required by law;

    b.  Set aside, vacate, and/or permanently enjoin the No-Objection Policy;

    c.  Award Plaintiffs their costs, reasonable attorney fees, and other disbursements deemed appropriate; and

    d.  Grant such other relief as the Court deems necessary, just, and proper.

Date: March 19, 2026

Respectfully submitted,

*/s/ Simon C. Brewer*
Simon C. Brewer (D.C. Bar No. 90042403)
Victoria S. Nugent (D.C. Bar No. 470800)
Brian D. Netter (D.C. Bar No. 979362)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

Phone: (202) 448-9090
Fax: (202) 796-4426
sbrewer@democracyforward.org
vnugent@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiffs*

24