# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERFAITH CENTER ON CORPORATE RESPONSIBILITY**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **SECURITIES AND EXCHANGE COMMISSION**, et al., <br><br> Defendants. | Case No. 26-cv-00957 <br><br> Hon. Carl J. Nichols |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

   **I.**   The Exchange Act and Rule 14a-8 ...................................................................... 2

   **II.**  The SEC's Novel No-Objection Policy............................................................... 6

       A.   SEC Adopts the New Policy......................................................................... 6

       B.   The Policy's Effects on Shareholders ......................................................... 8

LEGAL STANDARD......................................................................................................... 9

ARGUMENT..................................................................................................................... 10

   **I.**   Plaintiffs are entitled to judicial review of the No-Objection Policy. .............. 10

       A.   Plaintiffs have Article III standing.............................................................. 10

       B.   The No-Objection Policy is final agency action subject to APA review...... 19

   **II.**  The No-Objection Policy is unlawful and must be set aside. ........................... 25

       A.   The Policy is contrary to Rule 14a-8. ........................................................ 25

       B.   The Policy is not the product of reasoned decisionmaking. ........................ 29

       C.   The Policy was improperly adopted without required procedures. .............. 33

CONCLUSION.................................................................................................................. 38

## TABLE OF AUTHORITIES

**Cases**

*Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373 (D.C. Cir. 2021) ...................................... 17

*Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106 (D.C. Cir. 1993) ................................................................................................................................... 36

*Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914 (D.C. Cir. 2017) ............................... 31

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877 (S.D.N.Y. 1993) ............................................................................................... 2

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) .................................................... 31

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ............................................... 19

*As You Sow v. Chubb Ltd.*, No. 26-cv-734, 2026 WL 879666 (D.D.C. Mar. 31, 2026) ................................................................................................................................... 2

*Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710 (D.C. Cir. 2015 ................................. 36

*Biden v. Texas*, 597 U.S. 785 (2022) ......................................................................................... 29

*Cal. Communities Against Toxics v. EPA*, 934 F.3d 627 (D.C. Cir. 2019) .................................. 25

\* *Camp v. Pitts*, 411 U.S. 138 (1973) ................................................................................... 30, 31

*Carpenters Indus. Council v. Zinke*, 854 F.3d 1 (D.C. Cir. 2017) ............................................... 14

*Catawba County v. EPA*, 571 F.3d 20 (D.C. Cir. 2009) ............................................................. 36

*Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268 (D.D.C. 2021) ...................................... 9

*Ciba-Geigy Corp. v. U.S. EPA*, 801 F.2d 430 (D.C. Cir. 1986) .................................................. 20

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ...................................... 30

*City of Dania Beach v. FAA*, 485 F.3d 1181 (D.C. Cir. 2007) .............................................. 20, 21

*CropLife Am. v. EPA*, 329 F.3d 876 (D.C. Cir. 2003) ................................................................ 23

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ...................................................................... 14

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ........................................................ 29, 32

*Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100 (2025) ........................................................... 11

\* Authorities principally relied upon are marked with an asterisk

*Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*,
  512 U.S. 267 (1994)..................................................................................... 26, 27

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878
  F.3d 371 (D.C. Cir. 2017)..................................................................................... 12

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ............................................ 33

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)..................................... 26, 30

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ............................................. 12

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985)............................................. 30

*Flyers Rts. Educ. Fund, Inc. v. Dep't of Transp.*, 957 F.3d 1359 (D.C. Cir. 2020)..................... 15

*Flyers Rts. Educ. Fund, Inc. v. FAA*, 864 F.3d 738 (D.C. Cir. 2017)............................................. 32

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167
  (2000)..................................................................................... 10

*Her Majesty the Queen in Right of Ontario v. U.S. EPA*, 912 F.2d 1525 (D.C. Cir.
  1990) ..................................................................................... 21

*Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333 (1977) ............................................ 15

*Institutional Shareholder Servs. Inc. v. SEC*, 718 F. Supp. 3d 7 (D.D.C. 2024) ............................ 2

*Int'l Dark-Sky Ass'n, Inc. v. FCC*, 106 F.4th 1206 (D.C. Cir. 2024) ......................................... 15

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), *abrogated on other grounds by Cort
  v. Ash,* 422 U.S. 66 (1975)..................................................................................... 2

*Kixmiller v. SEC*, 492 F.2d 641 (D.C. Cir. 1974)........................................................................ 21

*LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) ................................................................. 10

*League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29
  (D.D.C. 2025) ..................................................................................... 15

*League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp.
  3d 135 (D.D.C. 2025) ..................................................................................... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................... 11, 18

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ................................................. 17, 18, 33, 36

iii

* Authorities principally relied upon are marked with an asterisk

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)................................................................................................ 10, 29

*Nat. Res. Def. Council v. EPA*, 643 F.3d 311 (D.C. Cir. 2011)............................................... 23, 24

*Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020).................................................. 22

*Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031 (D.C. Cir. 1979)........................................... 12

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644 (2007)..................................... 28

*Nat'l Council for Adoption v. Blinken*, 4 F.4th 106 (D.C. Cir. 2021).................................... 17, 36

*Nat'l Council of Agric. Emps. v. United States Dep't of Lab.*, 143 F.4th 395 (D.C. Cir. 2025)............................................................................................................ 18

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999 (D.C. Cir. 2014).................. 26

*Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490 (D.C. Cir. 1988)..................................... 29

*NetCoalition v. SEC*, 715 F.3d 342 (D.C. Cir. 2013) ................................................................... 30

*Ohio v. EPA*, 603 U.S. 279 (2024)............................................................................................... 29

*Panhandle E. Pipe Line Co. v. FERC*, 613 F.2d 1120 (D.C. Cir. 1979) ...................................... 27

*Panhandle Producers & Royalty Owners Ass'n v. Econ. Regul. Admin.*, 822 F.2d 1105 (D.C. Cir. 1987) ........................................................................................................ 37

*Patton v. Mullin*, 425 F.3d 788 (10th Cir. 2005) ......................................................................... 37

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)..................................................................... 34

*POET Biorefining, LLC v. EPA*, 970 F.3d 392 (D.C. Cir. 2020) ........................................... 21, 35

*Renal Physicians Ass'n v. HHS*, 489 F.3d 1267 (D.C. Cir. 2007).............................................. 18

*Robert F. Kennedy Human Rights v. Dep't of State*, No. 25-1774, 2026 WL 820811 (D.D.C. Mar. 25, 2026)......................................................................................... 13

*Safari Club Int'l v. Jewell*, 842 F.3d 1280 (D.C. Cir. 2016)....................................................... 19

*Safe Extensions, Inc. v. FAA*, 509 F.3d 593 (D.C. Cir. 2007)..................................................... 30

*Scenic America, Inc. v. U.S. Department of Transportation*, 836 F.3d 42 (D.C. Cir. 2016)................................................................................................................... 23, 24

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005)............................................................... 26

iv

* Authorities principally relied upon are marked with an asterisk

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ................................................................ 31

*Students for Fair Admissions, Inc. v. President & Fellows of Havard Coll.*, 600
U.S. 181 (2023) ......................................................................................... 15, 16

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016) ...................... 19, 21, 24

*U.S. Telecom Ass'n v. FCC*, 400 F.3d 29 (D.C. Cir. 2005) .................................... 36

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp.
3d 1 (D.D.C. 2020) ...................................................................................... 14

**Statutes**

5 U.S.C. § 551 ....................................................................................................... 19

5 U.S.C. § 552b ..................................................................................................... 34

5 U.S.C. § 553 ....................................................................................... 17, 33, 34, 35

5 U.S.C. § 556 ................................................................................................ 26, 27

5 U.S.C. § 702 ....................................................................................................... 10

5 U.S.C. § 704 ....................................................................................................... 19

* 5 U.S.C. § 706 ....................................................................................... 9, 25, 30, 33

15 U.S.C. § 78d-1 .................................................................................................. 34

15 U.S.C. § 78n ................................................................................................ 2, 19

15 U.S.C. § 78y ...................................................................................................... 19

Del. Code tit. 8, § 212 ............................................................................................. 2

**Rules**

17 C.F.R. § 200.18 ............................................................................................ 20, 34

17 C.F.R. § 200.30-1 ......................................................................................... 20, 34

17 C.F.R. § 201.192 ................................................................................................ 34

* 17 C.F.R. § 240.14a-8 ..................................................................................... *passim*

Adoption of Amendments Relating to Proposals by Security Holders, 41 Fed.
Reg. 52994 (Dec. 3, 1976) ............................................................................ 15

* Authorities principally relied upon are marked with an asterisk

Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating
  to Proposals by Security Holders, 48 Fed. Reg. 38218 (Aug. 23, 1983) .............................. 5, 29

Amendments To Rules On Shareholder Proposals, 63 Fed. Reg. 29106 (May 28,
  1998) ........................................................................................................................... 35

Procedural Requirements and Resubmission Thresholds Under Exchange Act
  Rule 14a-8, 85 Fed. Reg. 70240 (Nov. 4, 2020) ........................................................ 3

Solicitation of Proxies Under the Act, 7 Fed. Reg. 10655 (Dec. 22, 1942) ................................. 2

* Statement of Informal Proposals for the Rendering of Staff Advice With
  Respect to Shareholder Proposals, 41 Fed. Reg. 29989 (July 20, 1976) .......................... *passim*

Substantial Implementation, Duplication, and Resubmission of Shareholder
  Proposals Under Exchange Act Rule 14a-8, 87 Fed. Reg. 45052 (proposed July
  27, 2022) ................................................................................................. 3, 4, 33, 35

**Other Authorities**

Anna Toniolo, *The Impact of the SEC Punting* (last revised May 29, 2026),
  https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6832665 .................................................. 9

Div. of Corp. Fin., *Staff Legal Bulletin No. 14* (July 13, 2001; modified Feb. 4,
  2002), https://perma.cc/USN8-7T4P ....................................................................... 5

Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-
  Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L.
  Rev. 921 (1998) ....................................................................................................... 5, 33

Jennifer Zepralka et al., *The 2026 Proxy Season: Shareholder Proposal Trends*,
  Harv. L. Sch. F. on Corp. Gov. (June 11, 2026), https://perma.cc/3R3P-6LQ2 ..................... 9

Shalini Bhargava Ray, *Individualized Guidance in the Federal Bureaucracy* (June
  4, 2024) (report to the Admin. Conf. of the U.S.), https://perma.cc/PF8G-ZH4G ............... 5, 33

* Authorities principally relied upon are marked with an asterisk

**INTRODUCTION**

For more than 80 years, the Securities and Exchange Commission has administered a regulation that protects the right of shareholders of a public company to present a proposal in the company proxy statement regarding significant issues of concern. This regulation, known as Rule 14a-8, serves as a foundational mechanism for shareholder participation in corporate governance and for advancing the federal securities laws' core goals of investor protection and transparent markets. The shareholder proposal process has consistently promoted dialogue between corporate management and shareholders that is critical to protecting publicly traded companies' long-term performance and shareholder value. The transparency and accountability that follow from robust shareholder rights are also a key reason that global capital flows to American markets—investors have confidence that U.S. markets provide meaningful mechanisms for disclosure, accountability, and investor protection.

A 2025 change in policy by the SEC immediately destabilized that regulatory process and tilted the power that was carefully balanced between shareholders and corporate management toward corporate executives and boards. Under the SEC's new policy, a company can secure the SEC's blessing to exclude a shareholder proposal merely by asserting that it has a good reason to do so—without needing to satisfy the standards established by regulation. This lopsided treatment inflicts material harm on shareholders that rely on the Rule 14a-8 process to protect their investments and advance their interests in companies' long-term financial success. Accordingly, Plaintiffs Interfaith Center on Corporate Responsibility (ICCR) and As You Sow—two industry leading organizations that have long participated in the shareholder proposal process—bring this suit to protect their rights and the rights of ICCR's members. The new policy is contrary to law, arbitrary and capricious, and was adopted without proper rulemaking procedures. It therefore must be set aside and vacated.

1

**BACKGROUND**

**I.    The Exchange Act and Rule 14a-8 promote "fair corporate suffrage"**

"Public company governance, at its highest level, occurs through annual and special shareholders meetings," where shareholders vote on a variety of issues. *Institutional Shareholder Servs. Inc. v. SEC*, 718 F. Supp. 3d 7, 11 (D.D.C. 2024). Shareholders can vote either in person or via a "proxy." When the shareholder elects to vote via proxy, she authorizes another person to cast votes on her behalf. *See, e.g.*, Del. Code tit. 8, § 212(b). "As a typical corporation's shareholders became increasingly numerous and widely distributed, the proxy-voting system became 'an indispensable part of corporate governance.'" *As You Sow v. Chubb Ltd.*, No. 26-cv-734, 2026 WL 879666, at *1 (D.D.C. Mar. 31, 2026) (quoting *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 881 (S.D.N.Y. 1993)).

Section 14(a) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78n, regulates the solicitation of proxies "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964), *abrogated on other grounds by Cort v. Ash,* 422 U.S. 66 (1975). Congress sought to "control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which had frustrated the free exercise of the voting rights of stockholders." *Id.* (cleaned up).

To ensure "fair corporate suffrage," *id.*, Congress authorized the Commission to promulgate regulations governing the solicitation of proxies. 15 U.S.C. § 78n(a). Since 1942, the Commission's rules have required companies to include in their proxy materials shareholder proposals that meet certain eligibility criteria. *See* Solicitation of Proxies Under the Act, 7 Fed. Reg. 10655, 10656 (Dec. 22, 1942) (establishing the "[d]uty of management to set forth stockholders' proposals" in proxy statements). In the ensuing decades, those rules have been

2

amended to achieve the SEC's goal of ensuring "that public investors receive full and accurate information about all [shareholder] proposals that are to, or should, be submitted to them for their action." Procedural Requirements and Resubmission Thresholds Under Exchange Act Rule 14a-8, 85 Fed. Reg. 70240, 70265 n.278 (Nov. 4, 2020) (quoting Statement of Informal Proposals for the Rendering of Staff Advice With Respect to Shareholder Proposals, 41 Fed. Reg. 29989, 29990 (July 20, 1976)). The regulation containing these requirements is known today as "Rule 14a-8." *See* 17 C.F.R. § 240.14a-8.

Rule 14a-8 strikes a carefully calibrated "balance" between "preserving the ability of shareholders to engage with a company and other shareholders through the shareholder proposal process" and the needs of corporate management to effectively run public companies. Substantial Implementation, Duplication, and Resubmission of Shareholder Proposals Under Exchange Act Rule 14a-8, 87 Fed. Reg. 45052, 45060 (proposed July 27, 2022). Shareholder proposals raise a range of important topics, from corporate governance and executive pay to human capital management, political spending, and human health effects, to name a few. These issues create a need for information sharing among shareholders and dialogue between shareholders and management. Rule 14a-8 facilitates this information exchange, and balances the competing needs of shareholders and management, by instituting a general requirement that companies "must include a shareholder's proposal in its proxy statement," absent a valid reason for excluding it. *Id.* § 240.14a-8. As principally relevant here, Rule 14a-8 sets forth 13 substantive bases that a company may invoke if it wishes to exclude a shareholder proposal. *Id.* § 240.14a-8(i). These include, for example, that the proposal is "[i]mproper under state law"; relates "to the company's ordinary business operations," which shareholders at an annual meeting cannot appropriately address; or concerns a topic not "significantly related to the company's business." *Id.*

If a company's management intends to invoke one of these bases to exclude a shareholder proposal, it must follow the Rule's carefully delineated procedures for doing so. *Id.* § 240.14a-8(j). Specifically, the company "must file its reasons with the Commission no later than 80 calendar days before it files its definitive proxy statement." *Id.* The company's statement must include "[a]n explanation of why the company believes that it may exclude the proposal, which should, if possible, refer to the most recent applicable authority, such as prior Division letters issued under the rule." *Id.* § 240.14a-8(j)(2)(ii). In turn, the shareholder proponent "may submit a response" as soon as possible "the Commission staff will have time to consider fully [the proponent's] submission before it issues its response." *Id.* § 240.14a-8(k). The Commission has explained "the staff will always consider information concerning alleged violations of the statutes or rules administered by the Commission, and this may include arguments as to why it is believed that the intended omission of a shareholder proposal would be violative of the proxy rules." 41 Fed. Reg. at 29990. Ultimately, "the burden is on the company to demonstrate" to "the Commission or its staff" that the company "is entitled to exclude a proposal." 17 C.F.R. § 240.14a-8(g).

For many years, the Division of Corporation Finance implemented these procedures through what is referred to as the no-action letter process, adopted by the Commission to further Rule 14a-8. *See* 41 Fed. Reg. 29989 (setting forth the process); *see also, e.g.*, 87 Fed. Reg. at 45053 (further describing this practice as it existed decades later). In that process, the SEC staff would consider a company's no-action request and the shareholder proponent's response, evaluate them, and then "express[] whether they would recommend enforcement action to the Commission if a company excludes a proposal from its proxy materials." 87 Fed. Reg. at 45053; *see also, e.g.*, Div. of Corp. Fin., *Staff Legal Bulletin No. 14* (July 13, 2001; modified Feb. 4, 2002), https://perma.cc/USN8-

7T4P (describing the staff process). If the company met its burden of persuasion, the staff would issue a no-action letter stating that "[t]here appears to be some basis" for the company's view that it may exclude the proposal, and indicating that the staff would not recommend enforcement action if the company were to exclude the proposal. By contrast, if the company did not meet its burden of persuasion, the staff would issue a letter stating that it is "unable to concur" in the company's view. If the staff was "unable to concur" with the company's position, and the company nonetheless omitted the proposal, the staff could refer the matter for possible enforcement action against the company.

These letters did not purport to bind the Commission, companies, or shareholder proponents. *See* 41 Fed. Reg. at 29990. But, as the Commission has recognized, the no-action process "provide[d] a fair and efficient mechanism" that "serve[d] the interests of shareholders and issuers well." Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders, 48 Fed. Reg. 38218, 38218 (Aug. 23, 1983); *see also* 41 Fed. Reg. at 29990 (observing that the process helps companies and shareholders avoid "unnecessary litigation"). The staff's concurrence or refusal to concur has generally been honored by both companies and shareholder proponents. *See* Ex. 2, Declaration of Danielle Fugere ("Fugere Decl.") ¶ 8; Ex. 3, Declaration of Joshua Zinner ("Zinner Decl.") ¶ 23. As a result, staff's no-action decisions "substantially affect[ed] the behavior of all market participants" because shareholder proponents and companies alike would "rely" on them to guide their actions. Shalini Bhargava Ray, *Individualized Guidance in the Federal Bureaucracy* 26 (June 4, 2024) (report to the Admin. Conf. of the U.S.), https://perma.cc/PF8G-ZH4G (quoting Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 947 (1998)).

## II.   The SEC's Novel No-Objection Policy overturns 50 years of reliance interests

### A.   SEC Adopts the New Policy

Late last year, the SEC upended these longstanding policies and practices. In October 2025, Chairman Atkins gave a speech calling for a "fundamental reassessment of Rule 14a-8." *See* Ex. A to Ex. 1, Declaration of Simon C. Brewer ("Brewer Decl."), Chairman Paul S. Atkins, Keynote Address at the John L. Weinberg Center for Corporate Governance's 25th Anniversary Gala (Oct. 9, 2025) (hereinafter, "Atkins Speech"), at 3. Chairman Atkins expressed his opinion that companies' proxy statements include too many shareholder proposals. *See id.* at 1–2. But, at that time, he recognized that any changes to Rule 14a-8 would need to undergo notice and comment, and be adopted by the Commission, before they could take effect. *See id.* at 3.

Notwithstanding that admonition, just one month later the Division of Corporation Finance issued a statement announcing a new policy regarding how the staff would now assess and respond to company notices of intent to exclude shareholder proposals under Rule 14a-8 during the 2025-2026 proxy season. Ex. B to Brewer Decl., Div. of Corp. Fin., SEC, *Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season* (Nov. 17, 2025) (hereinafter, the "No-Objection Policy").[1] This unprecedented change—made without any prior notice or opportunity to comment—came in the middle of the ongoing proxy season and took effect immediately. *See id.* Although the No-Objection Policy purported to be motivated by the government shutdown that ended in November 2025, *see id.* at 1, this Policy continues to dictate the staff response to a company's notice of intent to exclude a shareholder proposal, at least through September 30, 2026. The SEC has not confirmed whether or not the Policy will be renewed after that date.

---

[1] Though issued by the Division of Corporation Finance, the Statement also indicated that the new Policy applies to and will be followed by the Division of Investment Management.

The No-Objection Policy rigidly proscribes how staff respond to notices of intent to exclude a shareholder proposal. For twelve of the thirteen possible bases for excluding a proposal, the Policy provides that a company has the right to obtain a "no-objection" letter from the SEC. If the company submits "an unqualified representation that the company has a reasonable basis to exclude the proposal," then the SEC staff "will respond with a letter indicating that . . . the Division [of Corporation Finance] will not object if the company omits the proposal from its proxy materials." *Id.* at 2. Under the policy, the company's representation can be "based on the provisions of Rule 14a-8, prior published guidance, and/or judicial decisions." *Id.* (footnote omitted). This No-Objection Policy explicitly states that the SEC staff "will not evaluate the adequacy of the representation or express a view on the basis or bases the company intends to rely on in excluding the proposal," as it had done previously. *Id.* Now, the staff's issuance of a no-objection letter is "based solely on the company's or counsel's representation." *Id.* Because the Policy requires the staff to issue a no-objection response as long the company includes an unqualified representation of entitlement, the staff exercise no independent judgment and need not await the proponent's response before issuing a no-objection letter.

By contrast, if the company does not include such a representation or request a response, then the SEC staff will not respond at all. *See id.* And if the company invokes the remaining basis for excluding a proposal (that the proposal is not a proper subject under state law, *see* 17 C.F.R. § 240.14a-8(j)(1)), then the staff will "continue to review and express its views" as it did before. *See* No-Objection Policy.

Immediately following the Policy's publication, then-Commissioner Crenshaw issued a statement criticizing the new Policy. She explained that, through the Policy, "staff have been ordered to rubber stamp those submissions irrespective of their content." Ex. C to Brewer Decl.,

Comm'r Caroline A. Crenshaw, *Statement on Division of Corporation Finance's Announcement on the 14a-8 Process* (Nov. 17, 2025) (hereinafter, "Crenshaw Statement"), at 2. Even if companies' submissions contain "representations [that] are unreasonable on their face or contain misrepresentations or omissions," the companies will receive a no-objection letter from the SEC. *Id.* As a result, the Policy "effectively creates unqualified permission for companies to silence investor voices (with 'no objection' from the Commission)." *Id.* at 3.

### B. The Policy's Effects on Shareholders

As Commissioner Crenshaw predicted, the No-Objection Policy immediately began harming market participants, including ICCR's members and As You Sow. *See* Fugere Decl. ¶¶ 12–28; Zinner Decl. ¶¶ 25–39; Ex. 4, Declaration of Rev. Dr. Charles C. Buck ("Buck Decl.") ¶¶ 15–20; Ex. 5, Declaration of Jihyun Oh ("Oh Decl.") ¶¶ 10–14. Soon after the Policy's announcement, companies began receiving and requesting no-objection letters, even on topics where, in past years, staff consistently refused to concur with a company's analysis. Fugere Decl. ¶ 13. Companies have become, or are likely to become, less receptive to engagement with shareholders, such as ICCR's members and As You Sow, as more companies seek and obtain no-objection letters from the SEC, including with respect to As You Sow's proposals, without any meaningful consideration of proponents' arguments. *See id.* ¶¶ 14–18; Zinner Decl. ¶¶ 27–28, 36. This has directly led to fewer of Plaintiffs' shareholder proposals being included on proxy statements. For example, 88% of ICCR members' challenged proposals were excluded this proxy season. Zinner Decl. ¶ 27. This policy change also has forced As You Sow and ICCR's members to increase expenditures, reallocate resources, and/or engage with fewer companies and submit fewer shareholder proposals. Fugere Decl. ¶ 25; Buck Decl. ¶¶ 18–19; Oh Decl. ¶¶ 10–14. With fewer shareholder proposals reaching proxy statements this year, As You Sow and ICCR's members are denied the opportunity to vote on issues raised by their fellow shareholders. Fugere Decl. ¶¶ 19, 21; Buck Decl. ¶ 19.

Available data confirm the adverse effects of the No-Objection Policy. Under the Policy, approximately 83% of companies' Rule 14a-8(j) submissions received no-objection responses; the remainder either did not seek a response or were withdrawn by the company. *See* Jennifer Zepralka et al., *The 2026 Proxy Season: Shareholder Proposal Trends*, Harv. L. Sch. F. on Corp. Gov. (June 11, 2026), https://perma.cc/3R3P-6LQ2. Scholarly analysis also "suggests that some companies used the [No-Objection] Policy to exclude proposals that likely would have reached the ballot under the prior regime, including proposal templates that, in the preceding season . . . had been the subject of an exclusion request that was explicitly denied by SEC staff." *See* Anna Toniolo, *The Impact of the SEC Punting* 3 (last revised May 29, 2026), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6832665.

Accordingly, Plaintiffs filed this suit under the Administrative Procedure Act (APA), contending that the No-Objection Policy is unlawful and must be set aside because it is substantively and procedurally deficient. *See* Dkt. 1. The court entered a briefing schedule under which the case can be resolved based on cross-motions for summary judgment and the certified administrative record filed by the SEC. *See* Minute Order (May 4, 2026).

## LEGAL STANDARD

In APA cases, motions for summary judgment "serve as mechanisms for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 277 (D.D.C. 2021) (quotation marks omitted). The Court will "hold unlawful and set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2). "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself," and *post hoc* rationalizations cannot substitute for explanation or evidence provided by the

9

agency decisionmaker. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

## ARGUMENT

### I.  Plaintiffs are entitled to judicial review of the No-Objection Policy.

Plaintiffs are entitled to judicial review of the No-Objection Policy under the APA, 5 U.S.C. § 702 *et seq.* The Policy fundamentally reshapes how the SEC operates the Rule 14a-8 process, with clear effects on both shareholder proponents and companies that follow that process. And the Policy effectively abrogates the key legal rights and obligations set forth in Rule 14a-8.

### A.  Plaintiffs have Article III standing.

Plaintiffs have Article III standing to bring their claims. Under the familiar three-part test, a plaintiff has standing if (1) "it has suffered an injury in fact" that is "concrete and particularized" and "actual or imminent," (2) "the injury is fairly traceable to the challenged action of the defendant," and (3) "it is likely . . . that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). In evaluating standing, the Court "must assume [Plaintiffs] will prevail on the merits." *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

Plaintiffs have three independently sufficient bases for standing. First, As You Sow has organizational standing on its own behalf as a shareholder and representative of other shareholders. Second, ICCR has associational standing on behalf of its members, which are harmed by the No-Objection Policy. And third, both Plaintiffs have standing based on the procedural injury caused by the SEC's failure to provide an opportunity for notice and comment. The No-Objection Policy caused each of these injuries, and each will be redressed by setting aside the Policy.

**1. As You Sow's Organizational Injury:** The No-Objection Policy directly injures As You Sow, which frequently files shareholder proposals under Rule 14a-8. Fugere Decl. ¶¶ 3, 5, 12.

10

Because shareholder proponents, such as As You Sow, are "the 'object'" of the No-Objection Policy, there is "'little question' that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**a.** The No-Objection Policy effectively amends Rule 14a-8 in a manner that interferes with As You Sow's rights and interests protected by the Rule. As described above, the Rule requires any company intending to exclude a shareholder proposal to timely notify the SEC and the proposal's proponent. 17 C.F.R. § 240.14a-8(j). The proponent then has an opportunity to respond, and the company bears the burden of persuading the agency that the proposal may be excluded. *Id.* § 240.14a-8(g), (k). Under the prior policy, when As You Sow filed a shareholder proposal that a company intended to exclude, As You Sow would submit briefing responsive to the company's notice, and the SEC staff agreed with As You Sow's arguments more than half the time. Fugere Decl. ¶¶ 7–11. Under the No-Objection Policy, however, companies can unilaterally exclude a proposal just by representing to the SEC that they have a "reasonable basis" to exclude the proposal, without any further argument considered by SEC staff. *Id.* ¶ 13. This new Policy has deprived As You Sow of its ability to exercise its rights in the Rule 14a-8 process as a qualified shareholder proponent, including by denying it the opportunity to make arguments that would inform the SEC in determining whether a company had actually met its burden of persuasion. *Id.* ¶¶ 13–18.

Since the No-Objection Policy took effect, As You Sow has had multiple shareholder proposals excluded with no opportunity to respond and be heard by SEC staff. *Id.* ¶ 14. It has submitted additional proposals since this lawsuit commenced that may be subject to the No-Objection Policy. *See id.* ¶ 27. Thus, the Policy has diminished As You Sow's rights and its ability

to be an effective shareholder proponent and representative of other shareholders. *See id.* ¶¶ 13–27.

As You Sow also experiences harm in its capacity as a shareholder that votes on other shareholders' proposals. *Id.* ¶¶ 19, 21. By removing the risk of SEC enforcement of Rule 14a-8, *see id.* ¶ 17, it is entirely predictable that fewer shareholder proposals will reach companies' proxies. As You Sow is therefore deprived of the ability to vote on those shareholder proposals and is impeded from advancing its "goal(s) of reducing risk, benefiting brand reputation, improving company performance, and increasing material disclosures" through shareholder votes *Id.* ¶¶ 2, 19. That, too, constitutes an Article III injury. *See Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1042-43 (D.C. Cir. 1979) (holding that owners of corporate shares had standing to challenge agency action that impaired their interest in voting those shares "in a financially prudent and ethically sound manner").

These harms carry additional adverse consequences for As You Sow and its "core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024); *see also, e.g.*, *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (observing that an organization demonstrates Article III standing when the challenged action "injured the organization's interest" and the organization "used its resources to counteract that harm" (quotation marks omitted)). Part of As You Sow's core work includes representing other shareholders in filing proposals by helping them navigate the Rule 14a-8 proposal process. The No-Objection Policy has frustrated As You Sow's ability to effectively advocate and to provide services to other shareholders. Fugere Decl. ¶¶ 19, 24–26. This role is likely to be further reduced so long as the No-Objection policy remains in effect. *Id.* ¶ 27.

As You Sow typically uses the public record of past SEC no-action decisions, and the underlying papers filed by companies and proponents, to understand the factors that make a proposal permissible or excludable. *Id.* ¶¶ 23–24. Based on this analysis, it makes decisions regarding how to proceed over the following year in framing proposals for itself and for the shareholders it represents. *Id.* ¶ 24. Under the No-Objection process, however, SEC staff review of the adequacy of company no-action filings is no longer occurring, and shareholders' arguments are not being taken into account, thus impairing As You Sow's ability to review an up-to-date body of Rule 14a-8 decisions to inform and give guidance to its proposals. *Id.* ¶¶ 23–24, 26, 27.

The Policy has also caused certain companies to be less willing to engage with As You Sow, which makes it more difficult for As You Sow to advocate for itself or other shareholders outside of the Rule 14a-8 process. *Id.* ¶¶ 17, 19, 27. This has caused As You Sow to expend more resources and time trying to anticipate how the new policy will be used by corporate management and to adjust the ways it can further its own mission goals in and representing itself and other shareholders. *Id.* ¶ 25. Courts have found this type of injury to be enough for organizational standing. *See League of United Latin Am. Citizens v, Exec. Off. of the President*, 780 F. Supp. 3d 135, 189 (D.D.C. 2025) (finding organizational standing where challenged action would "render obsolete" organizations' existing tools, "force" them to "update educational information" and "require [them] to invest additional resources in training their staff and volunteers"); *Robert F. Kennedy Human Rights v. Dep't of State*, No. 25-1774, 2026 WL 820811, at *7 (D.D.C. Mar. 25, 2026) (finding organizational standing where "unpredictability" created by an action had materially impeded the organization's ability to counsel its clients and where the policy change "fundamentally alter[ed]" the way the organization provided its services). Because of this policy, As You Sow had to reshape how it engages in shareholder advocacy.

**b.** The harms outlined are directly traceable to the No-Objection Policy and redressable by vacatur of that Policy. The Policy deprives Plaintiffs of the rights conferred by Rule 14a-8 itself, including that shareholders will have an opportunity to present their views and have their arguments evaluated by SEC staff, with the burden of persuasion on the company. That harm is directly traceable to the SEC's actions, *see* Fugere Decl. ¶¶ 12–28; Zinner Decl. ¶¶ 25–39, and it is redressable by vacatur of the Policy. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017). Plaintiffs' requested relief of setting aside the No-Objection Policy would redress their injuries by going back to the prior Rule 14a-8 policy—encouraging discourse between companies and shareholders, allowing a response from shareholders when companies submit a notice of intent to exclude, and requiring the SEC to make a decision regarding the proposed exclusion based on the merits of a proposal instead of the companies' mere representations. *See* Fugere Decl. ¶ 28; Zinner Decl. ¶ 39.

Even if some portion of As You Sow's harm were traceable to third-party companies' reactions to the No-Objection Policy, that would not defeat traceability or redressability. *See Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (holding that plaintiffs had standing when "third parties will likely react in predictable ways" to a government policy); *see also, e.g.*, *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 24 (D.D.C. 2020) ("[T]he D.C. Circuit has routinely found causation established in cases where the relevant 'third-party conduct . . . is voluntary but reasonably predictable.'"). By design, the No-Objection Policy empowers corporate management to exclude shareholder proposals without serious consideration of their substance or proponents' responses. It was extremely predictable that corporate management would take advantage of this policy. *See* Crenshaw Statement at 3 ("It effectively creates unqualified permission for companies to silence investor voices (with 'no objection' from

14

the Commission).”). Not only was such conduct predictable, but it actually happened: Plaintiff As You Sow had multiple proposals excluded under the new Policy without companies meeting their required burden of persuasion and without As You Sow's arguments being considered. *See* Fugere Decl. ¶ 14; *see also, e.g.*, *id.* ¶ 15. Vacating the Policy, and returning to the status quo ex ante, would remediate those harms by returning to a system where companies and proponents near-universally respected the SEC's independent guidance. *Id.* ¶¶ 7–11, 12–28, Zinner Decl. ¶¶ 16–24, 25–39 (attesting that companies have uniformly followed the recommendations of Rule 14a-8 letters in the past); *see also* Adoption of Amendments Relating to Proposals by Security Holders, 41 Fed. Reg. 52994, 52995 (Dec. 3, 1976) (noting that companies delay printing proxy statements to await SEC staff's guidance).

**2. ICCR's Associational Standing:** ICCR is a membership association with standing based on the injuries suffered by its members. This form of standing "is always available to a 'voluntary membership organization with identifiable members' that 'represents [its members] in good faith.'" *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 55 (D.D.C. 2025) (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Havard Coll.*, 600 U.S. 181, 201 (2023)). ICCR plainly meets this requirement, as it has "submitted declarations from two members who alleged injury from the [challenged action] and affirmed that [Plaintiff] represented their interests." *Int'l Dark-Sky Ass'n, Inc. v. FCC*, 106 F.4th 1206, 1217 (D.C. Cir. 2024); *see* Buck Decl. ¶¶ 3, 19–20; Oh Decl. ¶¶ 4, 14–17. ICCR provides benefits to dues-paying members that support the organization. *Flyers Rts. Educ. Fund, Inc. v. Dep't of Transp.*, 957 F.3d 1359, 1361 (D.C. Cir. 2020) (citing *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 344–45 (1977)) (discussing traditional "indicia of membership," including the role members play in financing the organization); *see* Zinner Decl. ¶ 6.

It follows that ICCR has standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions*, 600 U.S. at 199 (quotation marks omitted). ICCR meets each requirement.

First, ICCR members—including United Church Funds (UCF) and Presbyterian Life & Witness—would otherwise have standing to sue in their own right. ICCR's members are being deprived of their right to be heard throughout the Rule 14a-8 process. *See* Buck Decl. ¶¶ 18–19; Oh Decl. ¶¶ 12–13. For the reasons discussed above, *supra* pp. 10–15, the injury ICCR's members are sustaining as shareholders (or as an entity charged with stewarding shareholder resources) is a cognizable legal injury. In past years, around half or less than half of ICCR members' proposals challenged by companies were excluded; this year, 88% of challenged member proposals were excluded. Zinner Decl. ¶ 27. ICCR's members are harmed by a policy that removes all guardrails from the Rule 14a-8 process and deprives shareholders of their right to respond to notices of intent to exclude a proposal. For example, Presbyterian Life & Witness submitted less than half the number of shareholder proposals as it has in years past because the No-Objection Policy made it so unclear how companies would receive a proposal. Oh Decl. ¶¶ 10–11. Without clear guidelines, and without a right for shareholders to be heard, it is more difficult for this ICCR member to engage with companies and file proposals. *Id.* ¶¶ 10–14. UCF is also experiencing these harms from the No-Objection Policy. Like Presbyterian Life & Witness, UCF has no right to be heard when its shareholder proposals are challenged and is filing less shareholder proposals because of the No-Objection Policy's lack of clarity. *See* Buck Decl. ¶¶ 16–17. Additionally, UCF is harmed because when other shareholders' proposals are excluded unlawfully, it loses the ability to exercise

16

its voting rights and express its stewardship priorities. *Id.* ¶ 18. UCF has also expended more resources, diverting its already limited resources, to attempt to predict how companies will respond to engagement and shareholder proposals. *Id.* ¶¶ 19–20. These harms are ongoing, as UCF and Presbyterian Life & Witness are unable to effectively prepare for the upcoming proxy season due to the uncertainty created by the Policy. *See id.* ¶ 20; Oh Decl. ¶ 14. Like As You Sow's injuries, these harms are traceable to the No-Objection Policy and redressable by vacating it. *See supra* pp. 14–15.

Second, protecting these members' interests is germane to ICCR's mission to "help [its] members pursue long-term engagements with companies on a variety of issues that have brought about valuable improvements for companies and their shareholders." Zinner Decl. ¶ 3. And third, because Plaintiffs are seeking vacatur, nothing about the claims here requires individual members' participation. *See, e.g.*, *Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 380 (D.C. Cir. 2021).

**3. ICCR's and As You Sow's Procedural Injury:** Both As You Sow and ICCR have standing because the SEC adopted the No-Objection Policy without the procedural safeguards required for agency rulemaking. *See* 5 U.S.C. § 553(b)–(c). The SEC's failure to provide an opportunity for notice and comment inflicts a procedural harm that "threatens their concrete interests." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). Plaintiffs "don't need to show" that "notice and comment[] would have actually changed the agency's final rule." *Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 113 (D.C. Cir. 2021). Instead, Plaintiffs need only "demonstrate a causal relationship between the final agency action and the alleged injuries," after which "the court will 'assume the causal relationship between the procedural defect and the final agency action.'" *Mendoza*, 754 F.3d at 1010.

The No-Objection Policy specifically threatens As You Sow's and ICCR members' concrete interest in being heard by the SEC before their shareholder proposal is excluded from a meeting. *See supra* pp. 10–17. The Policy also threatens Plaintiffs' ability to serve their members and/or other shareholders by providing guidance and counsel on navigating Rule 14a-8. *See supra* pp. 13, 16–17. These interests are core to Plaintiffs' (and their members') rights as shareholders and to their advocacy efforts. Had there been an opportunity to comment, both As You Sow and ICCR would have done so. *See* Fugere Decl. ¶¶ 29–31; Zinner Decl. ¶¶ 40–42. The absence of a notice-and-comment period harmed Plaintiffs' concrete interests, establishing a procedural injury.

Because the threshold for a procedural injury is met, "the normal standards for immediacy and redressability are relaxed." *Mendoza*, 754 F.3d at 1010 (citing *Lujan*, 504 U.S. at 572 n.7). Plaintiffs do not need to establish that "correcting the procedural violation would necessarily alter the final effect of the agency's action on the plaintiffs' interest." *Id.* To meet the redressability standard, a plaintiff is just required to "'show that the agency action was the cause of some redressable injury to the plaintiff[.]'" *Nat'l Council of Agric. Emps. v. United States Dep't of Lab.*, 143 F.4th 395, 404 (D.C. Cir. 2025) (quoting *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1279 (D.C. Cir. 2007)). For the reasons outlined above, the No-Objection Policy is the cause of As You Sow's and ICCR members' injuries—and setting aside that policy would redress the Plaintiffs' injuries, allowing them to once again have their voices heard through the shareholder proposal process and be more effective advocates. *See* Fugere Decl. ¶ 28; Zinner Decl. ¶ 39.

18

**B.  The No-Objection Policy is final agency action subject to APA review.**

The No-Objection Policy is "final agency action for which there is no other adequate remedy in a court," and is therefore reviewable under the APA. 5 U.S.C. § 704.[2] As an initial matter, the Policy is a "rule" because it is a "statement of general or particular applicability and future effect," and it is "designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4). In particular, the Policy prescribes the process by which the SEC will receive and respond to companies' Rule 14a-8(j) submissions notifying the agency of their intention to exclude a shareholder proposal during the 2025-2026 proxy season. That "implement[s]" the process established by Rule 14a-8 or, at a minimum, "describ[es] the organization, procedure, or practice requirements" of the SEC. *Id.* § 551(4).

The No-Objection Policy is also final agency action under the familiar two-prong test: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted). Under this "pragmatic approach," *id.* (quotation marks omitted), neither the agency's label nor the supposed informality of the agency action controls. *See, e.g.*, *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (disregarding "boilerplate" in a guidance document); *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (holding that an agency press release constituted final agency action). Instead, the finality inquiry elevates substance over form. If a guidance document

---

[2] The special judicial-review statute for certain SEC rules, 15 U.S.C. § 78y(b), does not apply here. That statute channels judicial review of "a rule of the Commission promulgated pursuant to" enumerated sections of Title 15 to the courts of appeals. Rules regulating proxy solicitations are authorized by 15 U.S.C. § 78n, which is not one of those enumerated sections. Accordingly, the APA provides for judicial review in district court.

"provides new marching orders" for carrying out an agency program, it is final and subject to judicial review. *City of Dania Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007).

The No-Objection policy readily satisfies both prongs of the finality test. It represents the consummation of the agency's decisionmaking for how the agency must review and respond to Rule 14a-8 submissions during the current proxy season. By establishing unequivocal, controlling requirements for that review, the Policy carries legal consequences for shareholder proponents and companies that participate in the process, as well as for the agency itself.

**1.** The Policy marks the consummation of the SEC's decisionmaking on how the agency will review and respond to Rule 14a-8 submissions during the 2025-2026 proxy season. In particular, the Policy requires the SEC to mechanically issue a no-objection letter to each company as long as the company provides an unqualified representation that it has a reasonable basis to exclude a shareholder proposal. The Policy does not permit any further case-by-case consideration about what process is necessary or appropriate under the Rule. As a result, the Policy is the culmination of the agency's decision on how to process and respond to Rule 14a-8 submissions for this proxy season. *See, e.g.*, *Ciba-Geigy Corp. v. U.S. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986) (concluding that agency action "unequivocally stat[ing] EPA's position on the question whether registrants were entitled to a cancellation hearing before labeling changes could be required" was final).

The fact that Division of Corporation Finance, rather than the full Commission, issued the statement adopting and announcing the No-Objection Policy does not defeat finality. By regulation, the Director of the Division of Corporation Finance is charged with responsibility for the "examination and processing of proxy soliciting material" pursuant to the Exchange Act. 17 C.F.R. § 200.18(b)(3); *see also id.* § 200.30-1(f)(4) (delegation of authority to Director of the Division of Corporation Finance). In light of those regulations, there is "no reason to question" the

20

Division's "authority to speak for the" SEC on this matter. *Her Majesty the Queen in Right of Ontario v. U.S. EPA*, 912 F.2d 1525, 1532 (D.C. Cir. 1990) (looking to the agency's regulations regarding the issuing official's responsibilities); *see also POET Biorefining, LLC v. EPA*, 970 F.3d 392, 404 (D.C. Cir. 2020) (concluding that agency action was final when it was approved by an Assistant EPA Administrator). Moreover, Commissioner Crenshaw's statement underscores that the Division's statement represents the SEC's final word on the Policy. *See* Crenshaw Statement at 3 ("This is the latest in a parade of *actions by this Commission* that will ring the death knell for corporate governance and shareholder democracy . . . ." (emphasis added)). At least in this matter, the Division speaks for the SEC.[3]

Nor is there any indication that the Policy is merely tentative or interlocutory pending further agency action. *See City of Dania Beach*, 485 F.3d at 1188 ("Nothing in the letter indicates that the FAA's statements and conclusions are tentative, open to further consideration, or conditional on future agency action."). Instead, the agency has consistently and routinely applied the Policy since it was announced in November 2025, reversing more than 50 years of consistent agency practice. The mere possibility that the SEC could revise the No-Objection Policy in the future does not undermine the Policy's finality. "The possibility of revision 'is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal.'" *POET Biorefining*, 970 F.3d at 404 (quoting *Hawkes*, 578 U.S. at 598). By the same token, the ostensibly time-limited nature of the Policy does not render it nonfinal. *See, e.g.*, *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68,

---

[3] This case is not governed by *Kixmiller v. SEC*, 492 F.2d 641 (D.C. Cir. 1974) (per curiam), where the D.C. Circuit declined to review a Rule 14a-8 no-action letter issued by SEC staff. The court held that the statute providing for direct review in the court of appeals was limited to "orders issued by the Commission," and that the letter did not qualify as such an order. *Id.* at 643–44 (cleaned up). By contrast, the APA permits judicial review of final agency action even if the action is not attributed to the agency head. *See, e.g.*, *POET Biorefining*, 970 F.3d at 404 (applying the APA's finality standard).

78 (D.C. Cir. 2020) ("[A]n interim agency resolution counts as final agency action despite the potential for a different permanent decision, as long as the interim decision is not itself subject to further consideration by the agency."). In sum, the Policy represents the culmination of the SEC's decision about what process will govern Rule 14a-8 submissions during the 2025-2026 proxy season, and there is no indication that the agency intends to conduct any additional proceedings on that question.

**2.** The No-Objection Policy also determines rights and obligations, and gives rise to legal consequences, in the Rule 14a-8 process. It does so with respect to the companies seeking to exclude shareholder proposals, SEC staff, and shareholder proponents themselves. Each of those is sufficient to demonstrate finality.

*First*, the Policy relieves companies seeking to exclude a shareholder proposal from obligations set forth in Rule 14a-8. The Rule establishes inclusion of a shareholder proposal as the default. *See* 17 C.F.R. § 240.14a-8 (noting that exclusion is permitted only "[u]nder a few specific circumstances"). By its plain text, the Rule imposes a legal obligation on companies that seek to exclude a shareholder proposal: "the burden of persuading the Commission or its staff . . . is on the company to demonstrate that it is entitled to exclude a proposal." 17 C.F.R. § 240.14a-8(g). But under the No-Objection Policy, the SEC provides no oversight as to whether the company's reasons are sufficient or even offered in good faith. As a result, a company need not meet its burden; indeed, it need not provide any evidence or argument that it is entitled to exclude a shareholder proposal. Instead, to receive a no-objection letter, it need only offer "an unqualified representation that the company has a reasonable basis to exclude the proposal." *See* No-Objection Policy at 2. And because supporting materials are now essentially unnecessary for the issuance of no-objection letters, the Policy discourages companies from including the type of material that one

22

seeking to persuade a decisionmaker would ordinarily offer. *See id.* ("[A] company's Rule 14a-8(j) notification should be limited to the information required by the rule as well as an unqualified representation that the company has a reasonable basis to exclude the proposal."). In practice and effect, the No-Objection Policy relieves the companies from ""the burden of persuading the Commission or its staff" that exclusion is appropriate.

*Second*, the Policy has legal consequences because it dictates when and how the SEC staff will respond to companies' submissions under Rule 14a-8. *See, e.g.*, *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 320 (D.C. Cir. 2011) (holding that guidance "bind[ing] EPA regional directors . . . qualifies as final agency action"); *CropLife Am. v. EPA*, 329 F.3d 876, 881 (D.C. Cir. 2003) (concluding that where an agency action "is binding on the agency," it is final). Prior to the No-Objection Policy, Division of Corporation Finance staff could exercise their discretion whether a company's reasons for excluding a shareholder proposal met the standards established by Rule 14a-8. The new Policy withdraws that discretion. Now, "the Division will 'not object' even if it *would have disagreed* with the company's analysis had it substantively reviewed the submission." Crenshaw Statement at 2. As long as the company's submission recites the magic words—that is, it makes an "unqualified representation that the company has a reasonable basis to exclude the proposal"—the Division must respond with a no-objection letter. No-Objection Policy at 2.

In this way, the Policy resembles the guidance that the D.C. Circuit held constituted final agency action in *Scenic America, Inc. v. U.S. Department of Transportation*, 836 F.3d 42 (D.C. Cir. 2016). There, the Federal Highway Administration issued guidance to its Division Offices regarding whether certain types of digital billboards complied with the relevant legal standards. *See id.* at 47. Under that guidance, the agency's Division Offices could "not deny a digital billboard

23

permit for violating [the applicable] lighting standards where that billboard [met] the timing and other requirements set forth in the Guidance." *Id.* at 56. Because the guidance "withdr[ew] some of the discretion concerning billboard permitting" those Division Offices "previously held," the guidance had a "clear legal effect" and qualified as final agency action. *Id.*

So too, here. The Policy withdraws the discretion previously exercised by the staff in evaluating and responding to a company's Rule 14a-8 submission and replaces it with a blanket policy. *See* Fugere Decl. ¶ 13 ("I am not aware of any company being denied a No-Objection letter that requested one . . . ."). How the SEC will respond to company submissions "is now a closed question," answered by automatic application of a one-size-fits-all rule. *Nat. Res. Def. Council*, 643 F.3d at 320. That rigid rule appears to foreclose the staff's ability to recommend enforcement action, even if exclusion of a shareholder proposal would violate Rule 14a-8, as long as the company makes the unqualified representation. Those legal consequences establish finality. *See Hawkes*, 578 U.S. at 599 (holding that an agency action that "narrows the field of potential plaintiffs" carries legal consequences).

*Third*, the Policy determines the legal rights of shareholder proponents as they participate in the Rule 14a-8 process. Under Rule 14a-8(k), a shareholder proponent "may submit a response" to explain why its proposal is properly included and to "respond[] to the company's arguments" for excluding the proposal. 17 C.F.R. § 240.14a-8(k). That provision creates a concomitant right to have that response meaningfully and substantively considered. *See* 41 Fed. Reg. at 29991 (assuring that "staff will *always* consider information concerning alleged violations of the statutes or rules administered by the Commission, and this may include arguments as to why it is believed that the intended omission of a shareholder proposal would be violative of the proxy rules" (emphasis added)). The No-Objection Policy effectively abrogates those rights. The Policy treats

24

as conclusive a company's unqualified representation that it has a reasonable basis to exclude a shareholder proposal. As a result, the staff need not await a proponent's response before issuing a no-objection response, even when promptly and formally advised that a substantive response is forthcoming. For example, Plaintiff As You Sow had multiple proposals excluded under the Policy with no opportunity to respond. *See* Fugere Decl. ¶¶ 14–15. That demonstrates the Policy has altered proponents' legal rights.

*Fourth*, the No-Objection Policy constitutes a legislative rule, which is "necessarily final." *Cal. Communities Against Toxics v. EPA*, 934 F.3d 627, 635 (D.C. Cir. 2019). As we explain further below (at pp. 34–37), the No-Objection Policy's legislative character arises from the fact that it effectively amends Rule 14a-8 (itself a legislative rule), as well as from its substantive effects on the participants in the Rule 14a-8 process. Because the Policy amounts to a legislative rule—although one promulgated without the required procedures—it is final for purposes of APA review.

## II. The No-Objection Policy is unlawful and must be set aside.

On the merits, the No-Objection Policy is unlawful multiple times over. First, it is contrary to law and arbitrary and capricious because it derogates from Rule 14a-8. 5 U.S.C. § 706(2)(A). Second, it is arbitrary and capricious because the SEC failed to justify the Policy based on the administrative record, and it failed to offer a reasoned and reasonable explanation for the change in policy. *Id.* Third, the SEC failed to follow proper rulemaking procedures, including notice and comment, in adopting the Policy. *Id.* § 706(2)(D). For each of these reasons, the APA requires that the Policy be held unlawful and set aside.

### A. The Policy is contrary to Rule 14a-8.

Because the Policy violates Rule 14a-8, it is unlawful. As a matter of black-letter law, "an agency is bound by its own regulations." *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752

25

F.3d 999, 1009 (D.C. Cir. 2014); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."). The No-Objection Policy derogates from Rule 14a-8's controlling standards in several ways, any of which is independently fatal to its legality.

**1.** The Policy improperly abrogates the burden of persuasion established by Rule 14a-8. The burden of persuasion determines "which party loses if the evidence is closely balanced." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). That burden "usually falls[] upon the party seeking relief." *Id.* at 58; *see also, e.g.*, 5 U.S.C. § 556(d). Consistent with those background principles, Rule 14a-8 expressly allocates the burden of persuasion to a company seeking to exclude a shareholder proposal (*i.e.*, to the party seeking relief from the Rule's general requirement that a shareholder proposal must be included in the company's proxy statement):

> ***Question 7:*** Who has the burden of persuading the Commission or its staff that [the shareholder proponent's] proposal can be excluded? Except as otherwise noted, the burden is on the company to demonstrate that it is entitled to exclude a proposal.

17 C.F.R. § 240.14a-8(g). As is evident from the regulatory text, the company seeking to exclude a proposal bears the burden of persuasion in any agency proceedings regarding the proposed exclusion, whether before "the Commission or its staff." *Id.* Thus, under the Rule, a company seeking to exclude a shareholder proposal "must lose" if the evidence before the agency "is evenly balanced." *Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Greenwich Collieries*, 512 U.S. 267, 272 (1994). In other words, neither the Commission nor the SEC staff can bless the exclusion of a shareholder proposal unless the company carries its burden.

The No-Objection Policy does not respect that allocation of the burden of persuasion. Instead, it guarantees that a company will win—by obtaining "'no objection' relief," Crenshaw Statement at 2—as long as it offers an unqualified representation that it has a reasonable basis to exclude the proposal. Under the Policy, it does not matter what arguments or evidence the proposal's

26

proponent puts forward; the company's unqualified representation guarantees a favorable response from the SEC.  That is plainly inconsistent with any reasonable understanding of the burden of persuasion. The new Policy requires "rubber stamp" approval of a company's submissions "even if [the SEC staff] *would have disagreed* with the company's analysis had it substantively reviewed the submission" and "even if the representations are unreasonable on their face or contain misrepresentations or omissions." Crenshaw Statement at 2.

As the Supreme Court's decision in *Greenwich Collieries* demonstrates, an agency rule that improperly reallocates the burden of persuasion cannot stand. There, the agency adopted a "true doubt rule" that "essentially shift[ed] the burden of persuasion" in agency proceedings onto the party opposing a benefits claim. *Greenwich Collieries*, 512 U.S. at 269; *see also id.* at 281 (explaining that the effect of the true doubt rule was "when the evidence is evenly balanced the claimant wins"). The Supreme Court rejected the true doubt rule as inconsistent with the APA, 5 U.S.C. § 556(d), which places the burden of persuasion on the party seeking an order or other relief before an agency. *See Greenwich Collieries*, 512 U.S. at 281.

The same logic applies here. Although the burden of persuasion is set by regulation rather than by statute,[4] Rule 14a-8 binds the SEC no less than a statute. *See, e.g.*, *Panhandle E. Pipe Line Co. v. FERC*, 613 F.2d 1120, 1135 (D.C. Cir. 1979) (reasoning that an agency has no "authority to play fast and loose with its own regulations"). As a result, the No-Objection Policy must be set aside.

---

[4] Because Rule 14a-8 expressly allocates the burden of persuasion onto the company, it is not necessary to decide whether the agency could, through notice-and-comment rulemaking, establish a different burden of persuasion. *Cf. Greenwich Collieries*, 512 U.S. at 271 (declining to decide whether an agency can displace the APA's default allocation of the burden of persuasion by regulation).

**2.** The No-Objection Policy likewise abrogates proponents' rights to respond substantively to a company's Rule 14a-8 submission and have that response substantively considered. Rule 14a-8(k) provides that a shareholder proponent "may submit a response" to explain why its proposal is properly included and to "respond[] to the company's arguments." 17 C.F.R. § 240.14a-8(k). Shareholders have relied on that mechanism for half a century.[5] In practice and effect, the No-Objection Policy renders that right meaningless. Because the No-Objection Policy treats as conclusive a company's unqualified representation that it has a reasonable basis to exclude a proposal, the staff now need not await a proponent's response before issuing a no-objection letter. *See, e.g.*, Fugere Decl. ¶¶ 14–16. As importantly, even if the staff do afford the proponent time to respond, the staff cannot consider or evaluate the strength of the proponent's arguments and decline to issue a no-objection letter. That hollows out a core feature of the Rule 14a-8 process designed to protect proponents' interests.

Relatedly, the No-Objection Policy improperly relinquishes the SEC's role in evaluating Rule 14a-8 submissions. By establishing a burden of persuasion, Rule 14a-8 necessarily implies that the Commission or its staff will weigh the arguments presented to determine whether the company has met its burden. *See* 17 C.F.R. § 240.14a-8(g). Otherwise, the burden of persuasion would be meaningless, and that subsection of the rule would be surplusage. That is not a plausible construction of the rule. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 668 (2007) (rejecting an interpretation that "would render [a] regulation entirely superfluous"). At a minimum, SEC staff are duty-bound to "consider" proponents' "arguments as to why it is believed that the intended omission of a shareholder proposal would be violative of the proxy rules." 41

---

[5] Though Rule 14a-8 does not explicitly require staff to await a proponent's response, in practice the proponent has always been afforded a reasonable opportunity to respond. *See* Fugere Decl. ¶ 16.

Fed. Reg. at 29991. The No-Objection Policy does not honor that commitment. Instead, it stacks the deck in favor of corporate management in the guise of neutrality. Rule 14a-8 does not countenance that approach.

### B.  The Policy is not the product of reasoned decisionmaking.

To survive arbitrary-and-capricious review, "agency action must be both "reasonable and reasonably explained." *Biden v. Texas*, 597 U.S. 785, 807 (2022). The agency must provide "a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up) (quoting *State Farm*, 463 U.S. at 43). Agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. At a bare minimum, the agency's account of the relevant facts must "have some basis in the record." *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir. 1988). And when an agency changes course, "it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (cleaned up).

**1.** Over the years, the SEC has carefully explained the rationale behind Rule 14a-8 and the no-action process, including how it balances the needs of both shareholder proponents and company management. *See, e.g.*, 48 Fed. Reg. at 38218 ("[T]he basic framework of current Rule 14a-8 provides a fair and efficient mechanism for the security holder proposal process . . . ."); 41 Fed. Reg. at 29990-91 (recognizing that staff process "promote[s] compliance with the proxy rules" and "assist[s] both management and the Commission"). That balance ensures that

29

shareholder voices are not unduly silenced, including in important matters of corporate governance where shareholder interests and management interests may not align.

To abrogate the balance the SEC has long struck, the agency needed to articulate "good reasons for the new policy," including a "reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox Television Stations*, 556 U.S. at 515–16. Such reasoning must be grounded in the administrative record. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (explaining that judicial review is ordinarily "based on the full administrative record that was before the" agency at the time of its decision); *see also* 5 U.S.C. § 706. If the new policy "is not sustainable on the administrative record made," it "must be vacated and the matter remanded." *Camp v. Pitts*, 411 U.S. 138, 143 (1973).

The SEC's certified administrative record plainly fails to support the No-Objection Policy. The administrative record filed with the Court is entirely blank—it contains *no* documents or other materials supporting the No-Objection Policy whatsoever. Dkt. No. 16. That should be the end of the matter. "If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Indeed, the D.C. Circuit has previously indicated as much in a case involving the SEC. Where the "[t]he SEC conducted no proceeding and created no administrative record documenting its decision-making process or explaining its reasoning"—as is also the case here—"well established norms of judicial review require [the Court] to remand" as long as it has jurisdiction. *NetCoalition v. SEC*, 715 F.3d 342, 346 (D.C. Cir. 2013). It does not matter if the agency "has chosen not to write down the reasons for its decision or is unable to do so. Neither possibility is acceptable under the Administrative Procedure Act." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 600 (D.C. Cir. 2007). The blank

30

administrative record necessarily indicates that the Policy is arbitrary and capricious, which requires vacatur and remand. *Camp*, 411 U.S. at 143.

**2.** Even setting aside the deficient administrative record, the agency acted arbitrarily and capriciously in adopting the No-Objection Policy. As noted, the SEC's No-Objection Policy broke with decades of policy, dating back over 50 years, in its implementation of Rule 14a-8. *See* 41 Fed. Reg. at 29990-91 (setting forth the no-action process in 1976). "[T]o depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). To the extent that the SEC set forth its rationale in its November announcement, the stated reasons fall far short of meeting the agency's obligations. Further, the SEC ignored important factors and reliance interests in adopting the Policy, which is itself arbitrary and capricious.

The announcement first cites vague "resource and timing considerations following the lengthy government shutdown" as justifying its policy change. No-Objection Policy at 1. But the SEC cites no data or evidence supporting this statement, and it fails to offer any explanation for why this government shutdown required a change in policy when prior government shutdowns did not. Mere "conclusory statements will not do; an agency's statement must be one of *reasoning*." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (quotation marks omitted). It is no answer to say that there may be undisclosed records or information supporting this stated reasoning. The SEC forfeited any reliance on any such records by failing to identify them at the time it adopted the policy and again by omitting them from the certified administrative record. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action

31

can be sustained."); *see also Flyers Rts. Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 746 (D.C. Cir. 2017) ("An agency decision based on 'reliable data reposing in the agency's files' but hidden from judicial view simply cannot withstand scrutiny." (alterations and some internal quotation marks omitted)).

The second cited reason—"the extensive body of guidance from the Commission and the staff available to both companies and proponents," No-Objection Policy at 1—fares no better. Despite the importance of staff guidance to both companies and shareholders, the SEC has long maintained that such guidance is not precedential. *See, e.g.*, 41 Fed. Reg. at 29991. The Policy reiterates that understanding, *see* No-Objection Policy at 2 n.3, but makes no effort to explain why, in light of that view, it is now reasonable to invite companies to rely on that prior guidance and to issue no-objection letters based on it. *See id.* at 2 (indicating that a company's unqualified representation can be "based on . . . prior published guidance"). The problem with this approach is obvious: a company can "cherry-pick and determine which guidance it finds most helpful" at any given moment, while remaining free to ignore any unhelpful or contradictory guidance, opinions, or responses. Crenshaw Statement at 3. Because proponents under the No-Objection Policy have no opportunity to apply past guidance in any meaningful way, and because the Policy forbids staff from reviewing the reasonableness of a company's representation, *see id.* at 2, a company can select far-afield or inapplicable guidance as the basis for its unqualified representation. The predictable result is that the No-Objection Policy "hands companies a hall pass to do whatever they want." *Id.* at 3. The No-Objection Policy offers no indication that the agency considered these evident flaws.

Moreover, the SEC failed to evaluate legitimate reliance interests in the prior policy, as is required. *Regents*, 591 U.S. at 30–32. As the Commission itself has recognized, "[t]he shareholder

32

proposal process has become a cornerstone of engagement between shareholders and company management." 87 Fed. Reg. at 45053; *see also* Fugere Decl. ¶¶ 6–11; Zinner Decl. ¶¶ 13–24; Buck Decl. ¶¶ 10–14; Oh Decl. ¶¶ 7–9. Over the decades, shareholder proponents and company management alike would "rely" on staff responses to no-action requests under Rule 14a-8 to guide their actions. Shalini Bhargava Ray, *Individualized Guidance in the Federal Bureaucracy* (June 4, 2024) (report to the Admin. Conf. of the U.S.), https://perma.cc/PF8G-ZH4G (citing Donna M. Nagy, *Judicial Reliance on Regulatory Interpretations in SEC No-Action Letters: Current Problems and a Proposed Framework*, 83 Cornell L. Rev. 921, 947 (1998)). In that way, the Rule 14a-8 process allowed shareholders and companies a low-cost, predictable, and reliable method of ordering their affairs. *See* 41 Fed. Reg. at 29991 (recognizing that staff's no-action letters "assist both managements and proponents in complying with the proxy rules"); 87 Fed. Reg. at 45053 (similar). The No-Objection Policy does not mention, let alone consider substantively, these interests market participants had in the longstanding administrative process. Given "decades of industry reliance on the [SEC's] prior policy" by shareholder proponents and companies alike, that omission falls well "short of the agency's duty." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016).

### C. The Policy was improperly adopted without required procedures.

The SEC adopted the No-Objection Policy "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). In substance and effect, the Policy is a legislative rule that could be adopted by the full Commission only after notice-and-comment rulemaking procedures. *See id.* § 553(b)–(c) (requiring notice-and-comment rulemaking); *see also Mendoza*, 754 F.3d at 1021 ("A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy."). Rather than follow notice-and-comment procedures and conduct a vote of the full Commission, however, the

33

SEC adopted the Policy via an "announcement" issued by the Division of Corporation Finance. Those procedural flaws require that the Policy be held unlawful and vacated.

**1.** The No-Objection Policy was improperly adopted without a vote of the entire Commission. The Policy effectively abrogates prior policy adopted by the Commission itself, embodied in Rule 14a-8 and prior Commission-level statements on the Rule 14a-8 process. *See* 41 Fed. Reg. at 29989–91 (laying out the no-action procedures to which the SEC has long adhered). But the novel No-Objection Policy was announced by the Division of Corporation Finance, which lacks any delegated authority to reverse such Commission-level pronouncements. *See* 17 C.F.R. § 200.18(b)(3); *id.* § 200.30-1(f)(4). Indeed, the Exchange Act itself prohibits the Commission from delegating "rulemaking" authority with respect to general rules. 15 U.S.C. § 78d-1(a). The Commission itself therefore needed to authorize any decision to abandon that policy or adopt a substitute, but there is no dispute that the Commission never voted to approve the No-Objection Policy. *See* Dkt. No. 16, at 1. That was improper. *See* 5 U.S.C. § 552b(d) (requiring a vote by a majority "of the entire membership of the agency" to take action).

**2.** The No-Objection Policy was improperly adopted without notice and opportunity for public comment. *See* 5 U.S.C. § 553(b)–(c); 17 C.F.R. § 201.192(b). Rule 14a-8 is a legislative rule that required notice-and-comment rulemaking. It carries the force and effect of law, prescribing when companies must include shareholder proposals in their proxy statements or when they may exclude them. *See generally* 17 C.F.R. § 240.14a-8 ("This section addresses when a company must include a shareholder's proposal in its proxy statement . . . ."). As a result, it can only be amended through notice-and-comment rulemaking. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (reiterating "notice-and-comment requirements . . . apply to legislative rules," and underscoring that agencies must "use the same procedures when they amend or repeal a rule as they used to

34

issue the rule in the first instance"). Recognizing that requirement, the SEC previously has undertaken notice-and-comment procedures when it has proposed and adopted amendments to Rule 14a-8. *See, e.g.*, 87 Fed. Reg. 45052 (proposed rule); Amendments To Rules On Shareholder Proposals, 63 Fed. Reg. 29106 (May 28, 1998) (final rule); 41 Fed. Reg. 52994 (Dec. 3, 1976) (final rule). Consistent with that understanding, the SEC's current Chairman recently observed that any change to Rule 14a-8 would require notice-and-comment rulemaking. Atkins Speech at 3 ("Of course, the Commission must first propose changes, then gather and consider public feedback before adopting any changes [to Rule 14a-8].").

Notwithstanding that requirement, the SEC declined to undertake notice-and-comment procedures prior to adopting the No-Objection Policy. Instead, it adopted the Policy via an "announcement" issued by the Division of Corporation Finance, without any prior notice, and with immediate effect. *See* No-Objection Policy at 1–2. The SEC has never published the Policy in the Federal Register, solicited comments from interested parties, or provided for a full Commission vote on the Policy.

This deviation from the requisite procedure cannot be justified on the theory that the No-Objection Policy is a mere "interpretative rule[]." 5 U.S.C. § 553(b)(A). "In contrast to legislative rules, which effect a substantive change in existing law or policy, interpretive rules clarify a statutory or regulatory term, remind parties of existing statutory or regulatory duties, or merely track preexisting requirements and explain something the statute or regulation already required." *POET Biorefining*, 970 F.3d at 407 (cleaned up). An interpretive rule must be consistent with the underlying substantive rule it purports to interpret. *See id*.

Under these principles, an agency cannot evade notice-and-comment procedures where a newly adopted rule "is irreconcilable with a prior legislative rule" merely by labeling it as

35

interpretive or a statement of policy. *Ass'n of Flight Attendants-CWA v. Huerta*, 785 F.3d 710, 718 (D.C. Cir. 2015). This doctrine ensures "fidelity to the rulemaking requirements of the APA" by "bar[ring] courts from permitting agencies to avoid those requirements by calling a substantive regulatory change an interpretative rule." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 35 (D.C. Cir. 2005) (collecting cases applying this principle). A rule that "adopts a new position inconsistent with existing regulations" must be deemed a legislative rule. *Mendoza*, 754 F.3d at 1021.

The No-Objection Policy "effectively amends" Rule 14a-8, which triggers the notice-and-comment requirement. *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993). In essence, it establishes a new regime—unmoored from the text of Rule 14a-8—that permits a company to secure "the SEC's blessing" to exclude a shareholder proposal merely by making an unqualified representation that it has a reasonable basis to do so. Crenshaw Statement at 1. As explained above, that approach cannot be reconciled with the plain text of Rule 14a-8. Simply put, there is nothing in the "specific provisions" of Rule 14a-8 that "compelled or logically justified" the SEC's newfound reliance on a company's unqualified representation. *Nat'l Council for Adoption*, 4 F.4th at 115 (cleaned up). Any modification to the burden of persuasion or to proponents' rights in the Rule 14a-8 process required notice and opportunity for comment.

**3.** Even setting aside its inconsistency with Rule 14a-8, the Policy has substantive effects that required the SEC to undertake notice-and-comment rulemaking prior to its adoption. The No-Objection Policy establishes an irrebuttable presumption that a company can exclude a shareholder proposal as long as it makes an unqualified representation that it has a reasonable basis to do so. Such an irrebuttable presumption can only be established by a substantive rule promulgated through notice-and-comment rulemaking. *See Catawba County v. EPA*, 571 F.3d 20, 34 (D.C. Cir. 2009) (distinguishing between policy adopting a "*rebuttable* presumption," which does not bind

the agency, and an irrebuttable presumption, which binds the agency and therefore constitutes a substantive rule); *Panhandle Producers & Royalty Owners Ass'n v. Econ. Regul. Admin.*, 822 F.2d 1105, 1110 (D.C. Cir. 1987) (same). Such an irrebuttable presumption is, moreover, inconsistent with the burden of persuasion established by Rule 14a-8. An irrebuttable presumption can have the effect of relieving a party of its burden of persuasion. *See, e.g.*, *Patton v. Mullin*, 425 F.3d 788, 804 (10th Cir. 2005) (recognizing that an irrebuttable presumption can improperly "relieve[] the state of its burden of persuasion on an element of the offense" in a criminal trial). That is the case here: a company seeking to exclude a proposal need not persuade anyone. Instead, it can offer mere *ipse dixit* and obtain a no-objection letter from the SEC. If the SEC wished to create such a presumption, it needed to undertake notice-and-comment procedures through which interested members of the public—such as Plaintiffs—had a full and fair opportunity to participate.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' motion for summary judgment, hold the No-Objection Policy unlawful, and vacate the Policy.


June 25, 2026                                        Respectfully submitted,


                                                    /s/ Simon C. Brewer
                                                    Simon C. Brewer (D.C. Bar No. 90042403)
                                                    Sophie Gelber (D.C. Bar No. 90038427)
                                                    Victoria S. Nugent (D.C. Bar No. 470800)
                                                    Brian D. Netter (D.C. Bar No. 979362)
                                                    Democracy Forward Foundation
                                                    P.O. Box 34553
                                                    Washington, DC 20043
                                                    Phone: (202) 448-9090
                                                    Fax: (202) 796-4426
                                                    sbrewer@democracyforward.org
                                                    sgelber@democracyforward.org
                                                    vnugent@democracyforward.org
                                                    bnetter@democracyforward.org

                                                    *Counsel for Plaintiffs*